Peter Goldstein [SBN 6992]
PETER GOLDSTEIN LAW CORP
peter@petergoldsteinlaw.com
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Telephone:    (702) 474-6400
Facsimile:    (888) 400-8799

*Attorney for Plaintiffs*
*MAUREEN GREENSTONE, individually and*
*as Appointed Guardian of SETH DALE*
*GREENSTONE, an Adult Protected Person*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA (LAS VEGAS)

| | |
|---|---|
| MAUREEN GREENSTONE, individually and as appointed Guardian of SETH DALE GREENSTONE, an Adult Protected Person,<br><br>Plaintiffs,<br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT; VIDAL CONTRERAS; and DOES 1 -10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>**Exhibit "A" Order Appointing Guardian**<br><br>1. **Unreasonable Search and Seizure—Excessive Force in violation of the Fourth Amendment (42 U.S.C. § 1983), Article 1, § 8 (2)**<br>2. **Violation of Article 1, § 8 (2) & Article 18 of the Nevada Constitution –Article 1, § 8 (2)**<br>3. **Municipal Liability – Custom or Policy, Failure to Train (42 U.S.C. §1983)**<br>4. **Municipal Liability – Ratification (42 U.S.C. §1983)**<br>5. **Battery**<br>6. **Negligence**<br>7. **Negligent Infliction of Emotional Distress**<br>8. **Americans with Disability Act Violation**<br><br>**DEMAND FOR JURY TRIAL** |

///

## COMPLAINT FOR DAMAGES

Plaintiffs MAUREEN GREENSTONE, individually, and as appointed Guardian of SETH

DALE GREENSTONE, a Protected Person, by and through their attorney, Peter Goldstein of Peter

Goldstein Law Corp, allege their Complaint against Defendants LAS VEGAS METROPOLITAN POLICE DEPARTMENT, VIDAL CONTRERAS and DOES 1-10, inclusive, as follows:

**INTRODUCTION**

1.     This case involves the officer-involved shooting (OIS) of SETH DALE GREENSTONE, a thirty-one-year-old Navajo man who resides in Las Vegas, Nevada.  SETH DALE GREENSTONE was shot in the left frontal lobe by LAS VEGAS POLICE OFFICER VIDAL CONTRERAS resulting in SETH suffering severe and permanent brain injuries.

2.     This civil rights action seeks compensatory and punitive damages from Defendants for violating various rights under the United States Constitution and Nevada Constitution and other state laws in connection with the police shooting of Plaintiff, SETH DALE GREENSTONE.  Plaintiff, MAUREEN GREENSTONE, individually, is the natural mother of Plaintiff SETH DALE GREENSTONE and is the appointed Guardian of SETH DALE GREENSTONE, an Adult Protected Person.

**PARTIES**

3.     At all relevant times, Plaintiff SETH DALE GREENSTONE was an individual residing in County of Clark, Nevada.

4.     At all times herein mentioned, Plaintiff MAUREEN GREENSTONE, the natural mother of SETH DALE GREENSTONE, was an individual residing in County of Clark, Nevada. MAUREEN GREENSTONE in her individual capacity as the mother and in a representative capacity as appointed Guardian of SETH DALE GREENSTONE, Exhibit "A", Order Appointing Guardian of Person SETH DALE GEENSTONE, an Adult Protected Person, attached hereto, and incorporated herein by this reference.

5.     At all times herein mentioned, Defendant LAS VEGAS METROPOLITAN POLICE DEPARTMENT (hereinafter "LVMPD") is and was at all relevant times mentioned herein, a municipality duly organized and existing under the laws of the State of Nevada.

6.     At all relevant times, LVMPD was the employer of Defendant VIDAL CONTRERAS ("CONTRERAS" and DOES 1-5, ("DOE OFFICERS") who were LVMPD Police Officers, and DOES 6 through 10 ("DOE SUPERVISORS") who were managerial,

supervisorial, and policymaking employees of the LVMPD. CONTRERAS and DOE OFFICERS are sued in their individual capacity for damages only.

7. At all times herein mentioned, LVMPD employed, controlled, and operated the LVMPD Police Department ("LVMPD POLICE DEPARTMENT"), its police officers, and are liable for the action and/or inactions of its police officers and DOES 6-10.

8. At all relevant times, Defendants CONTRERAS and DOES 1-10 were duly authorized employees and agents of LVMPD, who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant LVMPD.

9. At all relevant times, Defendants CONTRERAS and DOES 1-10 were duly appointed officers and/or employees or agents of LVMPD, subject to oversight and supervision by LVMPD's elected and non-elected officials.

10. In doing the acts and failing and omitting to act as hereinafter described Defendants CONTRERAS and DOES 1-10 were acting with the implied and actual permission and consent of LVMPD.

11. At all times mentioned herein, each and every LVMPD defendant was the agent of each and every other LVMPD defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every LVMPD Defendant.

12. The true names of Defendants DOES 1 through 10, inclusive, are unknown to Plaintiffs, who therefore sue these defendants by such fictitious names. The Plaintiffs will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct and liabilities alleged herein.

## JURISDICTION AND VENUE

13. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution. The Plaintiffs further invoke the

3

jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and decide claims arising under state law.

14. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in, the County of Clark, Nevada.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

15. Plaintiffs repeat and reallege each and every allegation hereinabove of this Complaint with the same force and effect as if fully set forth herein.

16. Upon information and belief, on March 1, 2021, at approximately 11:58 am, LVMPD were contacted via the 911 system about SETH DALE GREENSTONE because he was reported as being in an open field with a box cutter in his hand.

17. Upon information and belief, SETH DALE GREENSTONE had earlier placed a suicidal call on himself, claiming he was going to commit suicide.

18. Upon information and belief, Defendant OFFICER CONTRERAS responded to the call and found SETH DALE GREENSTONE walking in a desert lot near the intersection of Carey Ave and Lamb Blvd in Las Vegas, Nevada.

19. Upon information and belief, Defendant OFFICER CONTRERAS knew or should have known that SETH DALE GREENSTONE was suicidal and suffering a mental crisis.

20. When Defendant OFFICER CONTRERAS initially encountered SETH DALE GREENSTONE, he immediately drew his weapon, without placing distance between him and SETH DALE GREENSTONE or waiting for support from other officers. Officer CONTRERAS made no effort to peacefully resolve the situation.

21. Based on the limited bodycam publicly available, based on the limited bodycam publicly available, SETH DALE GREENSTONE was not looking at Defendant, CONTRERAS when he commanded him to act.

22. Upon information and belief, SETH DALE GREENSTONE could not hear and/or comprehend OFFICER CONTRERAS' commands, and OFFICER CONTRERAS knew

4

or should have known that SETH DALE GREENSTONE could not hear or comprehend his commands.

23. Upon information and belief, based on SETH DALE GREENSTONE's behavior, Defendants knew or should have known that SETH DALE GREENSTONE was suffering from a mental health crisis.

24. SETH DALE GREENSTONE never threatened the Defendant OFFICER CONTRERAS verbally.

25. At the time of the shooting of SETH DALE GREENSTONE, SETH DALE GREENSTONE did not pose an immediate threat to Defendant OFFICER CONTRERAS. .

26. At the time of the shooting of SETH DALE GREENSTONE, SETH DALE GREENSTONE did not pose a threat to any member of the public.

27. Upon information and belief, SETH DALE GREENSTONE had not broken any laws.

28. Upon information and belief, Defendant OFFICER CONTRERAS did not have probable cause to believe that SETH DALE GREENSTONE committed a crime.

29. Upon information and belief, Defendant OFFICER CONTRERAS did not have reasonable suspicion to believe that SETH DALE GREENSTONE had committed a crime.

30. Upon information and belief, Defendant OFFICER CONTRERAS shot SETH DALE GREENSTONE for refusing to comply with his commands and not because he ever constituted a threat to themselves, another officer, or any member of the public.

31. The Defendant OFFICER CONTRERAS shouted twice to drop the gun, just before firing his shots. The entire incident unfolded in six seconds.

32. Defendant OFFICER CONTRERAS' approach, implementation of preplanning, de-escalation, and threat assessment was not within Departmental training, tactics, and policy. Defendant OFFICER CONTRERAS failed to communicate and coordinate a response, slow the momentum, or gather resources".

33. Defendant OFFICER CONTRERAS closed the distance between himself and SETH DALE GREENSTONE, that placed him in a tactical disadvantage position. Defendant

5

OFFICER CONTRERAS moved towards SETH DALE GREENSTONE when cover and concealment were available and failed to use driver side door or rear of his vehicle as a barrier between himself and SETH DALE GREENSTONE. Defendant OFFICER CONTRERAS' threat assessment was not reasonable and created imminent jeopardy and disregarded preclusion that was available. Defendant OFFICER CONTRERAS' driving to the scene was not within tactics, training and policy. The above findings of Defendant OFFICER CONTRERAS were confirmed by CRT and Tactical review Board of LVMPD.

34.    Defendant OFFICER CONTRERAS was aware and compromised on most fundamental principles of officer-citizen contacts – de-escalation, slowing the momentum, getting to cover, and making use of the availability of other officers and resources.  Defendant Contreras knew the rules, understood them and was not confused about them.

35.    Officer Contreras' preplanning was not in accordance with tactics, training and policy.  Defendant OFFICER CONTRERAS preplanning was that he would find the subject and set up containment, wait for other officers to arrive, give commands to the subject, get his low-lethal weapon, and get the subject into custody.  Defendant OFFICER CONTRERAS did not implement his preplanning and did not coordinate a response, slow the momentum or gather resources.

36.    Defendant OFFICER CONTRERAS made some preplanning but never implemented, while driving to the scene. Defendant OFFICER CONTRERAS pursuant to STAR protocol to be effective the officer firstly must ascertain the location of the subject/SETH DALE GREENSTONE to implement the plan.    Defendant OFFICER CONTRERAS did not share the location to other officers after tracing SETH DALE GREENSTONE, instead announced that Officer Contreras was going out on SETH DALE GREENSTONE and announced Code Red. Secondly, according to the protocol did not use low-lethal weapon, did not slow momentum, and actually did exactly opposite by moving towards SETH DALE GREENSTONE.  Failure to slow the momentum was a significant factor in this situation because it reduced the time available for other officers to arrive and

assist.  The entire event unfolded in six seconds.  Officer Contreras if he had slowed the momentum, there would have been more time for implementing additional options.

37.    The information available to Officer Contreras was incomplete.  The CAD announcement marked the call suicide attempt and STAR Protocol, and described a Black or Hispanic male, in his 30s, wearing a grey hoodie and blue jeans, with blood on his hands and neck, and armed with a knife.  There was no information on why the subject was suicidal and how that was known, and the name of the 9-1-1 caller.

38.    There were no members of the public or other police officers in the immediate vicinity until another officer pulled up behind CONTRERAS.

39.    Defendant OFFICER CONTRERAS had the opportunity to avert any immediate threat that he perceived – e.g. (without limitation) by moving to a position of cover and awaiting the arrival of other officers.

40.    On approach of officer Contreras regarding the way Officer Contreras positioned his vehicle when he stopped.  When Officer Contreras spotted SETH DALE GREENSTONE, aimed Officer Contreras' car directly toward SETH DALE GREENSTONE and pulled off the road.  This placed him approximately 25-30 yards from SETH DALE GREENSTONE.  At this point in time there would have been no rush or reason to move in so close because SETH DALE GREENSTONE was simply standing in a field basically doing nothing, and there were no other people nearby.  Because Officer Contreras already knew the suspect was holding a bladed instrument (based on information from Dispatch), there was no reason to move in so close.  This was an opportunity for officer Contreras to creating distance between himself and SETH DALE GREENSTONE, allowing time to wait for other officers, "to consider additional ways of dealing with the situation.  The two reasonable options available to Officer Contreras were to (a) drive past SETH DALE GREENSTONE and turn back on the shoulder and (b) other option was to backup immediately before getting out of the vehicle.  Officer Contreras did neither.

41.    Backing up could have been done quickly and would have increased the distance between Officer Contreras and SETH DALE GREENSTONE, which would have

7

gained time for both the arrival of other officers and considering other possible actions. Under the STAR Protocol, officers are instructed to attempt to locate cover/concealment, as well as containment positions. Officer Contreras focus was only on containment. The initial placement of vehicle limited the option to the extent that Officer Contreras was alone and shortened the time available for other officers to arrive and assist. This undermined the two fundamental principles of the STAR Protocol and the Use of Force policy that are specifically designed to reduce the need for the use of excessive force – slow the momentum and de-escalate. The essential point is that there was no reason (given SETH DALE GREENSTONE's demeanor and the lack of other persons nearby for Officer Contreras to stop as close as Contreras did and immediately get out.

42. Officer Contreras was faulted for not using his driver side car door for cover. Positioning behind the door would have seriously limited Officer Contreras's mobility and could have created a situation where he was trapped. In addition, in the event there was a need to fire his weapon, Contreras would be shooting through the glass window.

43. Officer Contreras was faulted for not moving to the rear side of his vehicle for cover. That would have been the most reasonable thing for Officer Contreras to do as soon as Officer Contreras got out of the vehicle. It would have increased the distance, slowed the momentum and provided good cover – all of which should have been fundamental objectives. After firing at SETH DALE GREENSTONE, Officer Contreras had no difficulty moving fairly quickly to the back of his vehicle. Officer Contreras did this without changing the aim of his weapon and without turning his sight away from SETH DALE GREENSTON. This demonstrates that there was a reasonable possibility which Officer Contreras did not even attempt. Officer Contreras navigated that distance without assistance, though officer Nuskin testified that he partially guided Officer Contreras to the back of the vehicle.

44. The entire incident on its face was contrary to the Use of Force policy which states, the use of cover, building more distance, or withdrawal to a more tactically secure position should be considered as options to help create time to diffuse a situation. Instead, Officer Contreras moved forward several feet where Officer Contreras had no cover at all.

8

Officer Contreras moved forward in SETH DALE GREENSTONE's direction because his view was obstructed by a "soft shoulder" sign. It must also be noted that Officer Contreras continued to advance toward SETH DALE GREENSTONE (until Officer Contreras was nearly parallel to the sign) even after Officer Contreras had an unobstructed view of SETH DALE GREENSTONE. Officer Contreras failed to take action to de-escalate the situation or slow the momentum – other than twice shouting "drop the knife" just before firing. In fact, his action of moving toward SETH DALE GREENSTONE was just the opposite.

45. The elements necessary to justify the use of excessive force are ability, opportunity, imminent jeopardy, and preclusion. Two central themes of the Use of Force policy are de-escalation and slowing the momentum. Officer Contreras did not employ reasonable steps to de-escalate or slow the momentum. The placement of vehicle and deployment after arrival to scene were the first steps to avoid unorganized and hazardous approach to high-risk encounter. Officer Contreras failed to announce location, instead of providing cover for himself, immediately headed towards SETH DALE GREENSTONE's direction though SETH DALE GREENSTONE was standing alone in deserted lot. Officer Contreras's actions themselves that resulted in imminent jeopardy and a lack of preclusion. Motion to dismiss, Exhibit Officer Contreras did not implement preplanning, parked vehicle too close, should have backed up, should have moved to rear end of vehicle, should not have closed the distance between himself and SETH DALE GREENSTONE. Officer Contreras made "serious errors" that "forced the situation". Officer used poor tactics with his positioning and decision to make immediate contact by himself forced the situation. This provides for clear and convincing evidence that Contreras violated the Use of Force policy and did not follow his training. Therefore, Officer Contreras's actions did not comply with Departmental policies, procedures, and training. Officer Contreras's conduct involved multiple serious deviations – not mere technical deviations – from policy, tactics, and training.

46. Defendant OFFICER CONTRERAS did not attempt to de-escalate the situation or use less than lethal force.

9

47. Defendant OFFICER CONTRERAS did not attempt to communicate with SETH DALE GREENSTONE without his handgun drawn and aimed.

48. Defendant OFFICER CONTRERAS did not attempt to deploy any less lethal options (i.e., alternatives for less intrusive uses of force).

49. Defendant OFFICER CONTRERAS could have safely approached the SETH DALE GREENSTONE at anytime prior to shooting SETH DALE GREENSTONE.

50. Upon information and belief, Defendant OFFICER CONTRERAS did not attempt to get backup from a Crisis Intervention Team.

51. At the time of the use of force, including excessive force, SETH DALE GREENSTONE was unarmed and posed no imminent threat of death or serious physical injury to either OFFICER CONTRERAS and/or any other person.

52. Upon information and belief, OFFICER CONTRERAS suffered any injuries.

53. OFFICER CONTRERAS and DOES 1-10, are responsible for the SETH DALE GREENSTONE's injuries either because they were personally involved or because they were integral participants or because they failed to intervene.

**FIRST CLAIM FOR RELIEF**
**UNREASONABLE SEARCH AND SEIZURE — VIOLATION OF FOURTH AMENDMENT-EXCESSIVE FORCE (42 U.S.C. § 1983), AGAINST OFFICER CONTRERAS)**

54. Plaintiffs repeat and re-allege each and every allegation of this Complaint as set forth hereinabove with the same force and effect as if fully set forth herein.

55. SETH DALE GREENSTONE was not engaged in the commission of a crime.

56. SETH DALE GREENSTONE had no arrest warrants outstanding.

57. SETH DALE GREENSTONE did not pose an immediate threat to Defendant OFFICER CONTRERAS, or any member of the public.

58. Defendant OFFICER CONTRERAS shot SETH DALE GREENSTONE twice striking him and causing him permanent brain injuries.

59. The unjustified use of excessive force against SETH DALE GREENSTONE by OFFICER CONTRERAS, including, but not limited to, shooting SETH DALE

10

GREENSTONE twice deprived SETH DALE GREENSTONE of his right to be secure in his person against unreasonable and excessive force as guaranteed to SETH DALE GREENSTONE under the Fourth Amendment to the United States Constitution. The unreasonable use of force, including excessive force, OFFICER CONTRERAS deprived the SETH DALE GREENSTONE of his right to be secure in his person against unreasonable searches and seizures as guaranteed to SETH DALE GREENSTONE under the Fourth Amendment to the United States Constitution.

60. As a result, SETH DALE GREENSTONE suffered extreme pain and suffering and limited earning capacity.

61. The GUARDIAN of SETH DALE GREENSTONE claims, *inter alia*, compensatory damages and punitive damages for SETH DALE GREENSTONE.

62. As a result of the conduct, OFFICER CONTRERAS is liable for SETH DALE GREENSTONE's injuries, because OFFICER CONTRERAS was the integral participant in the use of excessive force.

63. This use of force was excessive and unreasonable under the circumstances, as SETH DALE GREENSTONE posed no imminent threat of death or serious physical injury to OFFICER CONTRERAS. Defendants' actions thus deprived SETH DALE GREENSTONE of his right to be free from unreasonable searches and seizures under the Fourth Amendment.

64. The conduct of Defendant OFFICER CONTRERAS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of SETH DALE GREENSTONE and therefore warrants the imposition of exemplary and punitive damages as to Defendant OFFICER CONTRERAS.

65. The GUARDIAN of SETH DALE GREENSTONE also seeks attorney's fees and costs under this claim.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF ARTICLE 1, § 8 (2) & ARTICLE 18 OF THE NEVADA CONSTITUTION**

66. Plaintiffs repeat and re-allege each and every allegation of this Complaint hereinabove with the same force and effect as if fully set forth herein.

11

67.     As described in Plaintiffs' first claim for relief, the acts and omissions of the Contreras violated Article I, § 8 and Article 18 of the Nevada Constitution.

68.     The unjustified use of excessive force against SETH DALE GREENSTONE by OFFICER CONTRERAS, including, but not limited to, shooting SETH DALE GREENSTONE twice deprived SETH DALE GREENSTONE of his right to be secure in his person against unreasonable and excessive force as guaranteed to SETH DALE GREENSTONE pursuant to violated Article I, § 8 and Article 18 of the Nevada Constitution.

69.     As a result, SETH DALE GREENSTONE suffered extreme pain and suffering and limited earning capacity.

70.     The GUARDIAN of SETH DALE GREENSTONE claims, *inter alia*, compensatory damages and punitive damages for SETH DALE GREENSTONE.

71.     As a result of the conduct, OFFICER CONTRERAS is liable for SETH DALE GREENSTONE's injuries, because OFFICER CONTRERAS was the integral participant in the use of excessive force.

72.     This use of force was excessive and unreasonable under the circumstances, as SETH DALE GREENSTONE posed no imminent threat of death or serious physical injury to OFFICER CONTRERAS. Defendants' actions thus deprived SETH DALE GREENSTONE of his right to be free from unreasonable searches and seizures under the Nevada Constitution.

73.     The conduct of Defendant OFFICER CONTRERAS was willful, wanton, malicious, and done with reckless disregard for the rights and safety of SETH DALE GREENSTONE and therefore warrants the imposition of exemplary and punitive damages as to Defendant OFFICER CONTRERAS.

74.     The GURDIAN of SETH DALE GREENSTONE also seeks attorney's fees and costs under this claim.

## THIRD CLAIM FOR RELIEF
**SUBSTANTIVE DUE PROCESS (42 U.S.C. § 1983) VIOLATION OF FOURTHEENTH AMENDMENT, DEPRIVATION OF FAMILIAL RELATIONS**
**(ALL PLAINTIFFS v. OFFICER CONTRERAS and DOES 1-10)**

75.     Plaintiffs repeat and re-allege each and every allegation of this Complaint hereinabove with the same force and effect as if fully set forth herein.

12

76. SETH DALE GREENSTONE and MAUREEN GREENSTONE , individually, have a cognizable interest under the United States Constitution to be free from state actions that deprive of liberty or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in Plaintiff' familial relationship with their son, SETH DALE GREENSTONE.

77. SETH DALE GREENSTONE had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States of Constitution to be free from state actions that deprive him of his right to liberty or property in such a manner as to shock the conscience.

78. The aforementioned actions of and OFFICER CONTRERAS, and DOES 1-10, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of SETH DALE GREENSTONE and/or individual Plaintiffs and with the purpose to harm unrelated to any legitimate law enforcement objective.

79. Defendants OFFICER CONTRERAS, and DOES 1-10, acting under color of state law, thus violated the Fourth, and Fourteenth Amendment rights, as well as provisions of the Nevada Constitution of SETH DALE GREENSTONE.

80. As a direct and proximate cause of the acts of OFFICER CONTRERAS, and DOES 1-10, SETH DALE GREENSTONE experienced severe pain and suffering and lost his earning capacity.  Plaintiffs, in their individual capacity suffered extreme and severe mental anguish and pain and have been injured in mind and body.

81. Defendant OFFICER CONTRERAS, and DOES 1-10 are liable for SETH DALE GREENSTONE's and individual Plaintiffs injuries, either because they were integral participants in the denial of due process, or because they failed to intervene to prevent these violations.

82. The conduct of Defendant OFFICER CONTRERAS, and DOES 1-10 were willful, wanton, malicious, and done with reckless disregard for the rights and safety of SETH DALE GREENSTONE and/or individual Plaintiffs and therefore warrant the imposition of exemplary and punitive damages as to OFFICER CONTRERAS, and DOES 1-10.

13

83.     Plaintiffs also seek statutory attorney fees under 42 USC Sec. 1988 and costs under this claim.

## FOURTH CLAIM FOR RELIEF
### MUNICIPAL LIABILITY FOR UNCONSTITUTIONAL CUSTOM OR POLICY, FAILURE TO TRAIN
### (42 U.S.C. § 1983),
### (ALL PLAINTIFFS v.  LVMPD and DOES 6-10)

84.     Plaintiffs repeat and re-allege each and every allegation of this Complaint as set forth hereinabove with the same force and effect as if fully set forth herein.

85.     On and for some time prior October 27, 2018 (and continuing to the present date), Defendants LVMPD, and DOES 1-10, deprived Plaintiffs and SETH DALE GREENSTONE of the rights and liberties secured to them by the Fourth and Fourteenth Amendments to the United States Constitution, in that said Defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiffs and SETH DALE GREENSTONE, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

(a)     Employing and retaining as police officers and other personnel, including, OFFICER CONTRERAS, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written LVMPD's policies, including the use of excessive force;

(b)     Of inadequately supervising, training, controlling, assigning, and disciplining LVMPD officers, and other personnel, including OFFICER CONTRERAS, DOES 1-10, whom Defendant LVMPD knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits, including the propensity for violence and the use of excessive force.

(c)     By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by Defendants OFFICER CONTRERAS, and DOES 1-5, who are and/or were Police officers of LVMPD;

(d)     By failing to retrain OFFICER CONTRERAS, and DOES 1-5, the LVMPD Police officers' conduct, including but not limited to, unlawful detention and excessive force, most notably against individuals suffering from mental crises.

14

(e)   By having and maintaining an unconstitutional policy, custom, and practice of detaining and arresting individuals without probable cause or reasonable suspicion, and using excessive force with respect to interacting with mentally disturbed individuals with a bladed instrument.  For example, there are numerous cases of LVMPD officers shooting individuals who are mentally ill that are holding either toys or bladed instruments but do not pose a threat of great bodily harm or deadly force to those officers and many of those officers create proximity with the subject violating their mandate to honor the sanctity of human life. The policies, customs, and practices of DOES 6-10 demonstrate deliberate indifference to individuals' safety and rights;

(f)   By failing to properly investigate claims of unlawful detention and excessive force by LVMPD Police officers; failing to investigate beyond OFFICER CONTRERASS account of events that OFFICER CONTRERAS' shot SETH DALE GREENSTONE;

(g)   By failing to institute appropriate policies regarding constitutional procedures and practices for use of force, including the use of less than lethal force;

(h)   By failing to train officers regarding Fourth Amendment rights of citizens;

(i)   By failing to train officers on the proper use of force;

(j)   By using excessive force against persons and condoning the use of excessive force, and conspiring to cover-up civil rights violations;

(k)   By inadequate training of its officers and other LVMPD employees, including OFFICER CONTRERAS, and DOES 1-5, on the aforementioned issues, including use of excessive force;

(l)   By failing to conduct a prompt and thorough investigation into the conduct of Defendants OFFICER CONTRERAS, and DOES 1-5,

(m)   By failing to train officers on how to assess the need for excessive force specifically with respect to individuals that are having a mental crisis.

(n)   By condoning the use of excessive force by an officer standing up against an unarmed individual who is not a threat;

(o)   By failing to employ and utilize Crisis Intervention Training when interacting with persons who have apparent mental health impairments.

86.   By reason of the aforementioned policies and practices of LVMPD and DOES 6-10, SETH DALE GREENSTONE was severely injured and subjected to intense pain and will continue to suffer from his injuries for the rest of his life.

87.   LVMPD and DOES 6-10 are liable for systemic injuries that have foreseeably resulted from the interactive behavior of several government officials, including (without limitation) their failure to train and supervise regarding interactions with subjects with a bladed

15

instrument. For example (without limitation), in such situations LVMPD and DOES 6-10, there has been failure to train and supervise regarding de-escalation, utilizing less intrusive force, buying time (to await backup and otherwise de-escalation), and other crisis intervention tactics.

88. Defendants DOES 6-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated, and through their actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of SETH DALE GREENSTONE, Plaintiffs, and other individuals similarly situated.

89. By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts of all Defendants, LVMPD, and DOES 6-10, acted with an intentional, reckless, and callous disregard for the life of SETH DALE GREENSTONE and Plaintiffs' constitutional rights. Defendants LVMPD and DOES 6-10, each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

90. Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by all Defendants, were affirmatively linked to and were a significantly influential force behind the injuries of SETH DALE GREENSTONE and Plaintiffs.

91. By reason of the aforementioned acts and omissions of all Defendants, Plaintiffs, in their individual capacity as parents of SETH DALE GREENSTONE, are entitled to damages.

92. Accordingly, Defendants are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983.

93. Plaintiffs also seek statutory attorney fees under 42 USC Sec. 1988 and costs under this claim.

94.    Plaintiffs seek punitive damages against individual supervisory police officer Defendants.

**FIFTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY – FAILURE TO TRAIN (42 U.S.C. § 1983), ARTICLE 1, § 8 (2) & ARTICLE 18 OF THE NEVADA CONSTITUTION (AGAINST DEFENDANTS LVMPD AND DOES 6-10)**

95.    Plaintiffs repeat and re-allege each and every allegation in paragraphs hereinabove of this Complaint with the same force and effect as if fully set forth herein.

96.    While acting under the color of state law and within the course and scope of their employment as police officers for LVMPD, Officer Contreras's unlawful use of excessive force in the shooting of SETH DALE GREENSTONE, who was unarmed at the time of the shooting, deprived SETH DALE GREENSTONE of his rights and liberties secured to him by the Fourth and Fourteenth Amendments, including the right to be free from unreasonable search and seizure and excessive force, the Article 1, § 8 (2) & Article 18 of the Nevada Constitution, including the right to be free from unreasonable search and seizure and excessive force. Nev. Const. art. 1, § 8 (2) & Nev. Const. art. 18.

97.    The training policies of the Defendant LVMPD were not adequate to train its police officers, including, but not limited to, OFFICER CONTRERAS, and DOES 1-10, with regard to using excessive force.  As a result, LVMPD police officers, including Defendant OFFICER CONTRERAS, and DOES 1-5, are not able to handle the usual and recurring situations with which they must deal, such as confronting individuals with suspected mental illness, properly giving commands and warnings prior to shooting and using excessive force. These inadequate training policies existed prior to the date of this incident and continue to this day, including, but not limited to:

> (a)    Failure to train officers on what constitutes a serious crime which SETH DALE GREENSTONE did not commit;

> (b)    Failure to train officers on whether or not a suspect posed  an immediate threat to officers and/or to de-escalate situations so as to prevent OIS;

> (c)    Failure to train officers about what constitutes active resistance to arrest, what consitiues probable cause for arrest; what constitutes totality of circumstances for use of force;

17

(d)    Failure to train officers on the reasonableness of a particular use of force based on the perspective of a reasonable officer at the scene rather than with 20/20 vision of hindsight;

(e)    Failure to train officers on the calculus of reasonableness which embodied an allowance for the fact of split-second judgment about the amount of force that is necessary for the particular situation involving SETH DALE GREENSTONE;

(f)    Failure to train officers on what actions are "objectively reasonable" in light of the facts confronting them, without regard to their underlying intent or motivation;

(g)    Failure to train regarding providing warnings before shooting and not shooting because somone takes one more step towards them;

(h)    Failure to train regarding what actions constitute threats of excessive force and violation of the Fourth Amendment, Article 18 of the Nevada Constitution.

(i)    Failure to properyl train officers who confront mentally impaired persons which LVMPD officers commonly confront and commonly use excessive force on;

98.    The Defendants LVMPD and DOES 6 through 10 were deliberately indifferent to the known or obvious consequences of its failure to train and/or supervise its police officers, including OFFICER CONTRERAS, and DOES 1-5, adequately with regard to critical situations. This inadequate training includes failing to teach officers to restrain from the use of excessive force upon confronting a non-threatening person and training when suspects confronted appear unable or unwilling to obey and how to de-escalate.

99.    Defendant LVMPD has numerous officer-involved shootings annually. Many of these shootings involve individuals who are unarmed and many who were suffering from mental illness. LVMPD was aware that there was and is a reoccurring problem with their officer's use of excessive force. In other words, LVMPD was aware that there was a problem involving numerous officer-involved shootings of individuals, which could have been avoided had the officers employed well known and accepted police tactics and techniques and to avoid having to unnecessarily using excessive and excessive force against these individuals who keep getting shot by LVMPD police officers, and shot multiple times when only one shot is sufficient to neutralize any threat.

18

100. At all times mentioned herein, LVMPD and DOES 6 through 10 were aware that failure to implement adequate training with regards to their officers would result in LVMPD continuing to have numerous unreasonable officer-involved shootings of individuals.

101. The training that LVMPD police officers, including Defendant, Officer Contreras, should have received with regard to the use of excessive force against individuals includes training that officers should have knowledge of when to use or not to utilize excessive force, to warn and to use less than lethal force when available.

102. On information and belief, the training provided to LVMPD police officers, including, Defendant OFFICER CONTRERAS, DOES 1-10, with regard to using excessive force against individuals, did not include training that officers should avoid discharging their firearms when confronting citizens wihout reasonable fear of death or great bodily injury.

103. The training that LVMPD police officers, including Officers OFFICER CONTRERAS, DOES 1-10 received with regards to using excessive force against individuals was inadequate because it has continuously resulted in numerous unreasonable uses of excessive force by LVMPD police officers against individuals annually (going back at least five (5) years). Further, the training that LVMPD police officers, DOES 1-10, including Officers OFFICER CONTRERAS, DOES 1-5 received with regard to using excessive force against individuals was inadequate because it failed to implement well known and accepted police tactics and techniques for dealing with individuals without having to use excessive force against them. These well known and accepted police practices and techniques are routinely used to train law enforcement from other agencies such as the Las Vegas Police Department, the Las Vegas County Sheriff's Department, and the Nevada Highway Patrol. Further, most police officers properly train their officers in crisis intervention.

104. The failure of the Defendant LVMPD, DOES 6-10, to provide adequate training with regard to when to use or not use excessive force, caused the deprivation of the SETH DALE GREENSTONE's constitutional rights by Defendants OFFICER CONTRERAS, and DOES 1-5. In other words, the Defendants' failure to train is so closely related to the

19

deprivation of the SETH DALE GREENSTONE's rights to be the moving force that caused the ultimate injury.

105. By failing to provide adequate training to LVMPD's police officers, including Defendant OFFICER CONTRERAS, and DOES 1-10, acted with an intentional, reckless, and callous disregard for the life of SETH DALE GREENSTONE and SETH DALE GREENSTONE's constitutional rights. All Defendants' actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

106. By reason of the aforementioned acts and omissions of LVMPD, OFFICER CONTRERAS, and DOES 1-10, PLAINTIFF's were caused to incur medical expenses and loss of financial support.

107. By reason of the aforementioned acts and omissions of Defendants and DOES 1-10, Plaintiffs have suffered loss of love, companionship, affection, comfort, care, society, and future support.

108. Accordingly, Defendants and DOES 6-10, each are liable to Plaintiffs for compensatory damages under 42 U.S.C. § 1983, Article 1, § 8 (2) & Article 18 of the Nevada Constitution. Nev. Const. art. 1, § 8 (2) & Nev. Const. art. 18.

109. The indvidiual Plaintiff's seek all permissible damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for their grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the SETH DALE GREENSTONE, any penalties, including, but not limited to, exemplary and punitive damages against individual defendants.

110. Plaintiffs also seek statutory attorney fees under 42 US Sec. 1988 and costs under this claim.

**FIFTH CLAIM FOR RELIEF**
**MUNICIPAL LIABILITY— RATIFICATION (42 U.S.C. § 1983), ARTICLE 1, § 8 (2) & ARTICLE 18 OF THE NEVADA CONSTITUTION (ALL PLAINTIFFS v. LVMPD AND DOES 6-10)**

111. Plaintiffs repeat and reallege each and every allegation as set forth hereinabove of this Complaint with the same force and effect as if fully set forth herein.

112. Defendant OFFICER CONTRERAS acted under the color of law when they shot SETH DALE GREENSTONE.

113. The acts and/or failure to act of Defendants LVMPD and DOES 6-10 deprived Plaintiffs of their particular rights under the United States Constitution, Article 1, § 8 (2) & Article 18 of the Nevada Constitution. Nev. Const. art. 1, § 8 (2) & Nev. Const. art. 18.

114. DOES 6-10 acted under the color of state law.

115. DOES 6-10 acted or purported to act in the performance of official duties under state, county, or municipal law, ordinance, or regulation.

116. DOES 6-10 had final policymaking authority from Defendant LVMPD concerning the acts and/or failure to act of Defendant OFFICER CONTRERAS , and DOES 1-5.

117. LVMPD and DOES 6-10 ratified the actions and failure to act of OFFICER CONTRERAS, including DOES 1-5, including their shooting of SETH DALE GREENSTONE.  That is, DOES 6-10, including supervisors, knew of and specifically made a deliberate choice to approve Officer Contreras' acts or inactions and the basis for it.

118. Upon information and belief, Defendant OFFICER CONTRERAS, LVMPD, and DOES 1-5 knew that SETH DALE GREENSTONE posed no threat of a clear and present danger of death or serious bodily injury to himself or others.

119. Defendants DOES 6-10 ratification of the acts and/or omissions of OFFICER CONTRERAS, and DOES 1-5, include, but are not limited to:

   (a) Defendants Officer Contreras, and Does 1-5 are still employed with LVMPD;

   (b) DOES 6-10 failed to conduct a prompt and thorough investigation of the events involving the shooting of SETH DALE GREENSTONE and the conduct of OFFICER CONTRERAS and DOES 1-5;

   (c) Defendants failed to conduct and complete a prompt and thorough investigation into the actions and/or inactions of Officer Contreras, and DOES 1-5, in connection with the shooting of SETH DALE GREENSTONE;

21

(d)  Defendant LVMPD, upon information and belief, did not do anything or take any action with respect to the shooting of SETH DALE GREENSTONE, resulting in de facto ratification;

(e)  Defendant LVMPD allowed the use of excessive force;

(f)  Failure to follow proper protocol in investigating  this OIS shooting and conducting thorough, unbiased interviews;

(g)  Failed to discipline and or retrain OFFICER CONTRERAS and DOES 1 THROUGH 10.

120.  Upon information and belief, Defendant LVMPD approved of the officers' actions.

121.  The individual Plaintiffs seeks all permissible damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for their grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the SETH DALE GREENSTONE, any penalties, including, but not limited to, exemplary and punitive damages.

122.  Plaintiffs also seek statutory attorney fees under 42 USC Sec. 1988 and costs under this claim.

**SIXTH CLAIM FOR RELIEF**
**BATTERY (Nevada State Law Claim)**
**(ALL PLAINTIFFS v. ALL DEFENDANTS)**

123.  Plaintiffs repeat and re-allege each and every allegation in paragraphs hereinabove of this Complaint with the same force and effect as if fully set forth herein.

124.  Defendants OFFICER CONTRERAS, and DOES 1-5, while working as Police officers for LVMPD, and acting within the course and scope of their duties, used unreasonable force when they intentionally shot SETH DALE GREENSTONE.

125.  In particular, Defendant OFFICER CONTRERAS intentionally shot SETH DALE GREENSTONE multiple times, at close range, and used unwarranted excessive and excessive force. SETH DALE GREENSTONE did not consent to be shot multiple times.

22

126. As a result of the actions of Defendant, OFFICER CONTRERAS, and DOES 1-5, SETH DALE GREENSTONE suffered severe pain and suffering and lost earning capacity. Defendant, OFFICER CONTRERAS, and DOES 1-5 had no legal justification for using said force, including excessive force, against SETH DALE GREENSTONE and said Defendant, OFFICER CONTRERAS, and DOES 1-5, the exercise of force while carrying out their official duties was an unreasonable use of excessive force.

127. As a direct and proximate result of the Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body.

128. Defendants LVMPD is vicariously liable for the wrongful acts of Defendant OFFICER CONTRERAS, and DOES 1-5 because they were acting under color of law and within the course and scope of their employment as police officers for LVMPD.

129. The conduct of Defendant OFFICER CONTRERAS, and DOES 1-5 were malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs and SETH DALE GREENSTONE, entitling Plaintiffs to an award of exemplary and punitive damages.

130. Plaintiffs also seek statutory attorney fees under 42 USC Sec. 1988 and costs under this claim.

**SEVENTH CLAIM FOR RELIEF**
**NEGLIGENCE (Nevada State Law Claim)**
**(ALL PLAINTIFFS v. ALL DEFENDANTS)**

131. Plaintiffs repeat and re-allege each and every allegation in paragraphs hereinabove of this Complaint with the same force and effect as if fully set forth herein.

132. The actions and inactions of the Defendants were negligent and reckless, including but not limited to:

    (a) The failure to properly and adequately assess the need to use excessive force against SETH DALE GREENSTONE;

    (b) The negligent tactics and handling of the situation with SETH DALE GREENSTONE, including the excessive shooting of SETH DALE GREENSTONE and pre-shooting negligence and the failure to allow SETH

23

DALE GREENSTONE time to comply with their commands, Defendants OFFICER CONTRERAS and DOES 1-5 intentions to shoot;

(c) The negligent detention and use of excessive force against SETH DALE GREENSTONE;

(d) The negligent use of excessive force, including the negligent use of handguns;

(e) The failure to provide prompt medical care to SETH DALE GREENSTONE;

(f) The failure to properly train and supervise employees, both professional and non-professional, including Defendants KENTON, GUNN and DOES 1-5;

(g) The failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of SETH DALE GREENSTONE;

(h) The negligent handling of evidence and witnesses;

(i) The negligent investigation into the conduct of Defendant OFFICER CONTRERAS and DOES 1-5 and the events relating to the shooting of SETH DALE GREENSTONE and/or failure of LVMPD to conduct a prompt and thorough investigation into the actions/inactions of Defendant OFFICER CONTRERAS and DOES 1-5;

(j) Violating LVMPD's policy regarding the use of excessive force specifically as it applies to individuals suffering from mental crises.

(j) Shooting SETH DALE GREENSTONE at close range while SETH DALE GREENSTONE was non-threatening or did not point a weapon at Defendant OFFICER CONTRERAS and DOES 1-5; and

(k) For failing to give adequate verbal warnings and commands, and not providing SETH DALE GREENSTONE an opportunity to comply, use cover, create distance, wait for backup.

133. As a direct and proximate result of the Defendants' conduct as alleged above, and other undiscovered negligent conduct, SETH DALE GREENSTONE was caused to suffer severe pain and suffering and lost earning capacity.

134. As a direct and proximate result of Defendants' conduct as alleged above, Plaintiffs suffered extreme and severe mental anguish and pain and have been injured in mind and body.

135. LVMPD is vicariously liable for the wrongful acts of Defendant OFFICER CONTRERAS, and DOES 1-5 because they acted under the color of law and within the course and scope of their employment as police officers for the LVMPD.

24

136.   Upon information and belief, the negligent acts of Defendant OFFICER CONTRERAS, and DOES 1-5, which resulted in bodily harm to SETH DALE GREENSTONE were vicariously condoned by LVMPD.

137.   The individual Plaintiff's seeks all permissible damages under Nev. Rev. Stat. §41.085, including, but not limited to, damages for their grief, sorrow, loss of probable support, companionship, society, comfort and consortium, and damages for pain, suffering of the SETH DALE GREENSTONE, any penalties, including, but not limited to, exemplary and punitive damages.

138.   Plaintiffs also seek statutory attorney fees and costs under this claim.

**EIGHTH CLAIM FOR RELIEF**
**AMERICANS WITH DISABILITIES ACT- 42 USC. § 12131 and REHABILITATION ACT**
**29 USC. § 794**
**V. LVMPD**

139.   Plaintiffs repeat and re-allege each and every allegation in paragraphs hereinabove of this Complaint with the same force and effect as if fully set forth herein.

140.   Upon information and belief, LVMPD receives federal funding.

141.   Upon information and belief, SETH DALE GREENSTONE suffered from a psychiatric disability.

142.   Upon information and belief, Defendant OFFICER CONTRERAS knew or should have known that SETH DALE GREENSTONE suffered from a psychiatric disability based on his behavior.

143.   Defendant OFFICER CONTRERAS had an obligation under the Americans with Disabilities Act and the Rehabilitation Act (ADA) to accomodate SETH DALE GREENSTONE's Disability when attempting to effectuate his detention.

144.   Upon information and belief Defendant OFFICER CONTRERAS did not modify their tactics to account for SETH DALE GREENSTONE's disability and in doing so both failed to reasonably accommodate his disability and discriminated against him based on his disability.

145. Upon information and belief, LVMPD does not instruct their officers to modify their tactics to effectuate arrest that reasonably accomodates disabilities when dealing with individuals with psychiatric disabilities and by failing to do so discriminated against SETH DALE GREENSTONE based on his disability.

146. The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1) & (2).

147. Title II of the ADA provides: No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. *Id.* § 12132. Discrimination includes a failure to reasonably accommodate a person's disability. To be a qualified individual with a disability, a person must suffer from a physical or mental impairment that substantially limits that person's ability to perform a major life activity — an activity that the average person in the general population can perform.

148. Title II of the ADA includes an affirmative obligation that public entities must make accommodations for people with disabilities.

149. Title II of the ADA mandates a public entity may be liable for damages under Title II of the ADA if it intentionally or with deliberate indifference fails to provide a reasonable accommodation to a disabled person. The failure to provide reasonable accommodation constitutes discrimination against the disabled person. A public entity may not disregard the plight and distress of a disabled person by failing to accommodate his or her needs.

150. Title II of the ADA mandates that once an entity is on notice of the need for accommodation, it is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation.

151. Title II of the ADA applies to LVMPD because it is a public entity.

152. Title II of the ADA applies to police departments.

26

153. Title II of the ADA requires LVMPD to train its officers in how to deal with physically and mentally disabled individuals.

154. Title II of the ADA mandates that government agencies, including police officers, must take a disabled person's disability into account by making reasonable modifications of policies and practices where needed to avoid discrimination. 42 U.S.C. Section 12132, 28 C.F.R. Section 35.130(b)(7).

155. SETH DALE GREENSTONE's form of mental illness is recognized impairments for purposes of the ADA.

156. SETH DALE GREENSTONE was disabled under the ADA because his mental illness substantially limited his ability to communicate, to interact with others, and to care for himself.

157. Defendant OFFICER CONTRERAS knew or should have known SETH DALE GREENSTONE was experiencing a severe mental health crisis. These Defendants should have known how to accommodate his mental illness by employing de-escalation strategies with the intent of achieving a safe and nonviolent self-surrender. Yet despite this knowledge, and the national mandate to accommodate the disabled, these Defendants chose to not to accommodate SETH DALE GREENSTONE impairment and chose to apply tactics that made a safe and nonviolent self-surrender impossible.

158. Defendant OFFICER CONTRERAS utilized techniques nationally understood to exacerbate and intensify stress and apprehension in the mentally ill. Such practices have long been rejected by police departments when interacting with persons suffering mental impairment. Such practices render it impossible for mentally ill persons to understand and/or to comply with directives and commands and are guaranteed to make a safe and peaceful self-surrender impossible.

159. Defendant OFFICER CONTRERAS could have reasonably accommodated SETH DALE GREENSTONE by engaging in non-threatening communications, respecting his comfort zone, waiting for the arrival of assistance equipped with nonlethal beanbag measures,

27

and using the passage of time to defuse the situation peacefully rather than encouraging a excessive confrontation.

160.    Defendant OFFICER CONTRERAS had the time, safety and opportunity to assess the situation and administer a strategy to appropriately accommodate SETH DALE GREENSTONE because he was not armed with a weapon, he maintained significant proximity from Defendants, and Defendants were positioned for safe retreat.

161.    At all times during Defendant OFFICER CONTRERAS' interactions with SETH DALE GREENSTONE, accommodation was achievable. Even when an emotionally disturbed individual is acting out and inviting officers to use excessive force to subdue him, the government interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill person who needs and requires accommodation for his disability.

162.    At all times during Defendant OFFICER CONTRERAS'S interactions with SETH DALE GREENSTONE, they knew or should have known that because of his impairment, they were required to exert greater effort and caution to take control of the situation through less intrusive means.

163.    By failing to accommodate SETH DALE GREENSTONE's mental health disability, Defendants acted with discriminatory intent and deliberate indifference to his federally protected rights.

164.    The conduct alleged herein was done in reckless disregard of SETH DALE GREENSTONE's constitutionally protected rights.

165.    By reason of the aforementioned acts and omissions of Defendants and each of them, Plaintiff has suffered loss of love, companionship, affection, comfort, care, and society as SETH DALE GREENSTONE is virtually nonverbal and unable to care for himself in any way.

166.    Accordingly, Defendants and each of them are liable to Plaintiff for compensatory damages in an amount according to proof at trial.

167.    Plaintiff also seeks statutory attorney fees under this claim.

168. Defendants LVMPD are vicariously liable to Plaintiff for damages for the foregoing acts of OFFICER CONTRERAS and the emotional distress negligently inflicted upon Plaintiff because they were acting under color of law, employed by LVMPD and within the course and scope of their employment as police officers for the LVMPD.

169. As a direct and proximate result of Defendants' conduct as alleged above, Plaintiff suffered extreme and severe mental, emotional anguish, distress, and pain and have been injured in mind and body.

170. Plaintiff is therefore entitled to damages for their mental and/or emotional distress as a result of the conduct of OFFICER CONTRERASabove mentioned.

171. Plaintiff also seeks attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, MAUREEN GREENSTONE, individually, and as appointed guardian of SETH DALE GREENSTONE SETH DALE GREENSTONE, through their attorney, request entry of judgment in their favor and against Defendant LVMPD, CONTRERAS and DOES 1-10, inclusive, as follows:

A. For compensatory damages in an amount to be proven at trial;

B. For general and hedonic damages;

C. For medical billing and expenses;

D. For punitive damages against OFFICER CONTRERAS in an amount to be proven at trial;

E. For interest;

F. For reasonable costs of this action, court costs, and attorneys' fees; and

G. For such other and further relief as the Court may deem just, proper, and appropriate.

DATED: February 22, 2023              PETER GOLDSTEIN LAW CORP


                                      By:  /s/ Peter Goldstein
                                           PETER GOLDSTEIN, ESQ.
                                      *Attorney for Plaintiffs*
                                      MAUREEN GREENSTONE, individually and as
                                      appointed Guardian of SETH DALE GREENSTONE


### DEMAND FOR JURY TRIAL

   Plaintiffs hereby demand a trial by jury.

DATED:  February 22, 2023             PETER GOLDSTEIN LAW CORP


                                      By:  /s/ Peter Goldstein
                                           PETER GOLDSTEIN, ESQ.
                                      *Attorney for Plaintiffs*
                                      MAUREEN GREENSTONE, individually and as
                                      appointed Guardian of SETH DALE GREENSTONE

30

# Exhibit A

Electronically Filed
06/08/2021 8:23 PM

*[signature]*

CLERK OF THE COURT

ORDR

**DISTRICT COURT**
**CLARK COUNTY, NEVADA**

| | |
|---|---|
| In the Matter of the Guardianship of the:<br>☐ Person<br>☐ Estate<br>☒ Person & Estate<br>☒ Summary Administration<br>of:<br>Seth Dale Greenstone,<br><div align="right">A Protected Person.</div> | G-21-054778-A<br>Department F |

**ORDER APPOINTING GUARDIAN(S) OVER ADULT**

This matter came before the Court for hearing on June 08, 2021. Petitioner Maureen Greenstone was present representing himself/herself.

Petitioner N/A was representing himself/herself.

Proposed Protected Person Seth Dale Greenstone, ☐ Was Present ☒ Was Not Present and is represented by counsel, Casey V Lee.   Presence waived

It appearing to the satisfaction of the Court that notice is sufficient; and

It appearing by clear and convincing evidence that it is necessary to appoint a guardian for the proposed protected person;

**IT IS HEREBY ORDERED AND DETERMINED BY THE COURT** as follows:

1. Seth Dale Greenstone, date of birth 02/17/1990, is a resident of the State of Nevada.
2. The proposed protected person is an adult who needs the appointment of a guardian. This request is supported by recent documentation demonstrating the need for a guardianship.
3. Notice has been served upon the adult, the spouse and/or any living relative, or the public guardian, if necessary, and/or any other persons or agency having the care, custody and control of the adult.
4. It is necessary and in the best interest of the protected person that petitioner(s) be appointed as guardian(s). The following is/are appointed to act as guardian(s) of the
   ☐ Person ☐ Estate ☒ Person and Estate ☒ Summary Administration
   and shall have the power and authority as may be necessary for the benefit of the above named Protected Person until further order of this Court:

Denise L Gentile
DISTRICT JUDGE
FAMILY DIVISION
Department F
LAS VEGAS, NV 89101-2408

Page 1 of 5 – Order Appointing Guardian(s) (Adult)

Statistically closed: USJR Guardianship - Set/Withd With Jud Conf/Hr (UGSW)

a.    First Guardian:    Maureen Greenstone
Street Address:    6435 Grass Meadow Drive #132
City, State, Zip:    Las Vegas, NV 89142
Telephone:

b.    Second Guardian:    N/A                                             OR ☐ N/A
Street Address:
City, State, Zip:
Telephone:

5.    The Guardian(s) shall participate in the guardianship training class, if offered, through _____ OR ☐ N/A

6.    Pursuant to NRS 159.081, the Guardian(s) shall file a written report on the condition of the Protected Person every year between the anniversary date of June 08, 2021 and August 07, 2021 for the first report and each year thereafter. This obligation continues until the guardianship of the person ends OR ☐ N/A

7.    Bond is:

☐ Not applicable

☐ Reserved pending the filing of the inventory

☐ Ordered in the amount of $_____.

☒ Waived

☐ A blocked account is ordered in lieu of bond

8.    Inventory:

☐ This is a person only guardianship; no estate is involved

☒ The Guardian(s) shall file an inventory of all of the property of the Protected Person which comes to the possession, or knowledge of the Guardian(s) by (date) August 7, 2021_____.

9.    Accounting:

☐ This is a person only guardianship; no estate is involved

☒ Summary administration of the estate is granted. An annual accounting is not required until assets exceed the statutory threshold for summary administration

☐ A verified account of the estate of the Protected Person shall be made and filed annually by_____, and must be filed within 60 days of this date and each year thereafter. This obligation continues until the guardianship of the estate ends.

10.    Pursuant to NRS 159.0593:

☒ There is clear and convincing evidence that the Protected Person is a person with a mental defect who is prohibited from possessing a firearm pursuant to 18 U.S.C. §922 (d)(4) or (g) or (4). A Record of the Order containing this filing shall be transmitted to the central repository for Nevada Records of Criminal History, along with a statement that the record is being transmitted for inclusion in each appropriate database of the National Instant

Denise L Gentile
DISTRICT JUDGE
FAMILY DIVISION
Department F
LAS VEGAS, NV 89101-2408

Page 2 of 5 – Order Appointing Guardian(s) (Adult)

Criminal Background Track System.

☐ The Protected Person's right to possess a firearm is not affected.

11. Pursuant to NRS 159.0594:

☒ The Protected Person lacks the requisite understanding to vote or otherwise participate in the election process and shall be removed from the voting records.

☐ The Protected Person's right to vote is not affected.

12. All powers are reserved to the Protected Person except for the following powers, which are granted to the Guardian(s):

**Powers over Person**

(*Court to check applicable powers granted to Guardian(s)*)

☒ To oversee, maintain and/or approve the placement of the Protected Person in the appropriate, least restrictive, and financially feasible care facility.

☒ Only in the event that provisions of NRS Chapter 433A DO NOT apply, to approve placement of the Protected Person in a secured facility, with the assistance law enforcement and/or REMSA if needed.

☒ To hire or discharge care givers as deemed necessary in the discretion of the Guardian.

☒ To authorize any medical care the Protected Person may require.

☒ To change the mailing address of the Protected Person.

☒ To make informed decisions regarding the Protected Person's health care, to include consultations on treatment plans, consents and admissions, consents for residential placements, consents for medications, and treatments recommended by medical providers, and the authority to make related decisions for the benefit of the Protected Person.

☒ The Guardian(s) is/are the Protected Person's personal representative for purposes of the Health Insurance Portability and Accountability Act of 1996, Public Law 104-191, and any applicable regulations. The Guardian(s) of the person has/have authority to obtain information from any government agency, medical provider, business, creditor or third party who may have information pertaining to the Protected Person's health care or health insurance.

☒ To ensure that housing and care arrangements provide the Protected Person with an appropriate level of safety, well-being, health and maintenance.

☒ To ensure that the Protected Person has access to family members and persons of natural affection, and those persons and family members have access to the Protected Person in a manner that ensures an appropriate level of safety and well-being for the Protected Person.

☒ To obtain neuropsychological examination to determine areas of defects and capacities.

☐ Other: _____

Denise L Gentile
DISTRICT JUDGE
FAMILY DIVISION
Department F
LAS VEGAS, NV 89101-2408

Page 3 of 5 – Order Appointing Guardian(s) (Adult)

**Powers over Estate**

*(Court to check applicable powers granted to Guardian(s))*

☑ Permission to sell, donate, distribute, dispose of and/or abandon personal property to maintain the integrity of the Protected Person's estate.

☑ Permission to freeze, access, utilize funds from, transfer and/or close any and all of the Protected Person's bank accounts and any and all other accounts at any financial institution, whether solely or jointly held, for the benefit of the Protected Person.

☑ Permission to redirect and/or become the representative payee for Social Security income, and similar income, if any, for the benefit of the Protected Person.

☑ Permission to obtain credit reports from any credit-reporting bureau to ascertain the status of any credit card accounts and/or lines of credit and activity on any such accounts.

☑ Permission to obtain tax information, tax returns and/or any necessary documents from the Internal Revenue Service for the benefit of the Protected Person.

☑ Permission to investigate, apply for and/or consent to services for which the Protected Person may be eligible.

☑ Permission to access, drill, open, inventory, remove the contents of, and/or close any safe deposit box, whether solely or jointly held by the Protected Person.

☐ Other: _____

13. Pursuant to NRS 159.074, a copy of this order must be served personally or by mail upon the Protected Person no later than 5 days after the date of the appointment of the Guardian. A notice of entry of the order must be filed with the Court.

14. The relatives required to be served and identified by petitioner as having been served pursuant to NRS 159.047(2) et seq. must be served with notice of this order pursuant to NRS 159.055(2)(d)(1) and are named in the Petition for Appointment of General Guardian and/or the Amended Petition for Appointment of General Guardian.

15. A notice of entry of order must be provided to the relatives identified above pursuant to NRS 159.055(3)(a).

16. The interested persons/entities required to be served and identified by the Petitioners as having been served pursuant to NRS 159.047(2) et seq. must be served with notice of this order pursuant to NRS 159.055(2)(d)(2).

17. A notice of entry of the order must be provided to the interested persons/entities identified above pursuant to NRS 159.055(3)(b).

Denise L Gentile
DISTRICT JUDGE
FAMILY DIVISION
Department F
LAS VEGAS, NV 89101-2408

18. Guardian(s) must file verified acknowledgements of the duties and responsibilities of a guardian pursuant to NRS 159.073(1)(c).

19. Guardian(s) must immediately have the Letters of Guardianship and Oath issued. The Letters of Guardianship may be revoked for failure to file the annual reports pursuant to NRS Chapter 159.

20. Other:

_____

_____

_____

_____

_____

Pursuant to the Nevada Revised Statutes, the following information is provided:

Protected Person's Attorney:  Legal Aid Center of Southern Nevada
Street Address:  725 E. Charleston Blvd.
City, State, Zip:  Las Vegas, Nevada 89104
Telephone:  (702) 386-1070

**IT IS SO ORDERED.**

**Dated this 8th day of June, 2021**

_____

**6E9 D70 C411 B307**
**Denise L Gentile**
**District Court Judge**

Denise L Gentile
DISTRICT JUDGE
FAMILY DIVISION
Department F
LAS VEGAS, NV 89101-2408

Page 5 of 5 – Order Appointing Guardian(s) (Adult)

**CSERV**

DISTRICT COURT
CLARK COUNTY, NEVADA

| In the Matter of the Guardianship of: | CASE NO: G-21-054778-A |
|---|---|
| Seth Greenstone, Protected Person(s) | DEPT. NO.  Department F |

## AUTOMATED CERTIFICATE OF SERVICE

This automated certificate of service was generated by the Eighth Judicial District Court. The foregoing Order Appointing General Guardian - Person & Estate -Summary was served via the court's electronic eFile system to all recipients registered for e-Service on the above entitled case as listed below:

Service Date: 6/8/2021

| | |
|---|---|
| Rosie Najera | rnajera@lacsn.org |
| Hope Samworth | hope@nevadalegalforms.com |
| Casey Lee | clee@lacsn.org |