# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MAUREEN GREENSTONE, individually, and)
as Appointed Guardian of SETH DALE )
GREENSTONE, an ADULT PROTECTED )
PERSON, )

                   Plaintiffs, )

     vs. )

LAS VEGAS METROPOLITAN POLICE )
DEPARTMENT, *et al.*, )

            Defendants. )

Case No.: 2:23-cv-00290-GMN-NJK

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS**

Pending before the Court is Defendant Officer Videl Contreras' Motion to Dismiss, (ECF No. 19). Plaintiffs Maureen Greenstone, individually, and as the Appointed Guardian of Seth Dale Greenstone ("Plaintiffs") filed a Response, (ECF No. 22), to which Officer Contreras filed a Reply, (ECF No. 25).

Also pending before the Court is Defendant Las Vegas Metropolitan Police Department's Motion to Dismiss, (ECF No. 21). Plaintiffs filed a Response, (ECF No. 22), to which LVMPD filed a Reply, (ECF No. 26).

The Court GRANTS in part and DENIES in part Officer Contreras' Motion to Dismiss and LVMPD's Motion to Dismiss.

## I.   BACKGROUND

This case arises from an officer-involved shooting resulting in Seth's incapacitation. (*See generally* First Am. Compl. ("FAC"), ECF No. 15). Plaintiff Maureen Greenstone is Seth's mother and was appointed in a representative capacity as Seth's guardian. (*Id.* ¶ 4). The specific facts underlying the officer-involved shooting as alleged in Plaintiff's FAC are as follows.

In March 2021, Seth called 911, claiming he was suicidal and was holding a knife in an open field. (*Id.* ¶ 12).  LVMPD set a suicide attempt call in the dispatch system and assigned Sergent Jared Stanton and Officer Kyle Nuskin to respond. (*Id.*).  Although he was purportedly not assigned by dispatch, Officer Contreras also responded. (*Id.* ¶ 13).  Officer Contreras "began speeding through the city streets, running red lights, crossing double lines, yelling, and cursing at other drivers." (*Id.*).

Officer Contreras was the first officer to arrive at Seth's location and parked "his vehicle approximately 25-30 yards away from Seth." (*Id.* ¶ 14).  Officer Contreras allegedly "sprang from his vehicle, drew his service weapon, and pointed it at Seth's head." (*Id.* ¶ 15).  Plaintiffs aver that Officer Contreras advanced towards Seth and ordered him to drop the knife. (*Id.* ¶ 15).  When Seth failed to comply, Officer Contreras fired two shots, incapacitating Seth. (*Id.*).  The entire encounter lasted six seconds. (*Id.* ¶ 17).

Plaintiffs allege that "[a]t the very moment of the shooting, Officer Nuskin, who arrived shortly after [Officer] Contreras, was in the process preparing a 'less-lethal' shotgun[.]" (*Id.*).  Plaintiff asserts that LVMPD Force Investigation Team ("FIT Team") later took measurements and concluded that Seth was "well outside striking distance." (*Id.*).  Plaintiffs further avers that after investigating the incident, the LVMPD Critical Incident Review Team ("CIRT") made several findings of fact, including that Officer Conteras: (1) "did not communicate or attempt to coordinate his response with other officers;" (2) "did not 'slow the momentum' or 'gather resources' before firing his weapon;" (3) "rapidly closed the distance between himself and Seth, thereby placing himself at a tactical disadvantage;" (4) failed to use the cover that was available to him;" (5) failed to withdraw so that he could use a greater variety of force options, including 'less lethal' force;" (5) advanced towards Seth "with his weapon pointed at Seth's head" despite having cover and concealment available; and (6) made an unreasonable threat

///

assessment. (*Id.* ¶¶ 21(a)–(g)).  Officer Contreras was later terminated from the LVMPD for his actions. (*Id.* ¶ 23).

Plaintiffs subsequently filed this lawsuit, asserting seven claims: (1) excessive force in violation of Seth's Fourth Amendment rights pursuant to 42 U.S.C. § 1983 against Officer Contreras; (2) deprivation of familial association in violation of Plaintiff Maureen's Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 against Officer Contreras; (3) deprivation of familial association in violation of Plaintiffs rights pursuant to art. 1, § 8 of the Nevada Constitution against Officer Contreras; (4) *Monell* liability pursuant to 42 U.S.C. § 1983 against the LVMPD; (5) discrimination based on Seth's disability in violation of his rights pursuant to the Americans with Disability Act and Amendments Act, 42 U.S.C. § 12131 *et seq.* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 against the LVMPD; (6) battery against Defendants; and (7) negligence against Defendants.  Officer Contreras and LVMPD then filed their Motions to Dismiss, (ECF Nos. 19, 22).

## II. <u>LEGAL STANDARD</u>

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

///

1    reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard
2    "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

3         "Generally, a district court may not consider any material beyond the pleadings in ruling
4    on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542,
5    1555 n.19 (9th Cir. 1989).  "However, material which is properly submitted as part of the
6    complaint may be considered." *Id.*  Similarly, "documents whose contents are alleged in a
7    complaint and whose authenticity no party questions, but which are not physically attached to
8    the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v.
9    Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994) (*overruled on other grounds by Galbraith v. Cnty. of
10   Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).  On a motion to dismiss, a court may also take
11   judicial notice of "matters of public record." *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132
12   (9th Cir. 2012).  Otherwise, if a court considers materials outside of the pleadings, the motion
13   to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

14        If the court grants a motion to dismiss for failure to state a claim, the court should grant
15   leave to amend "unless it determines that the pleading could not possibly be cured by the
16   allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe v.
17   United States*, 58 F.3d 494, 497 (9th Cir. 1995)).  Pursuant to Rule 15(a), the court should
18   "freely" give leave to amend "when justice so requires," and in the absence of a reason such as
19   "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure
20   deficiencies by amendments previously allowed, undue prejudice to the opposing party by
21   virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371
22   U.S. 178, 182 (1962).

23   ///
24   ///
25   ///

## III.     DISCUSSION

Officer Contreras moves to dismiss Plaintiffs' claims for (1) excessive force under the Fourth Amendment; (2) deprivation of familial association under the Fourteenth Amendment; (3) deprivation of familial association under the Nevada Constitution; (5) battery; and (6) negligence. (*See generally* Ofc. Conteras Mot. Dismiss).  LVMPD moves to dismiss Plaintiffs' *Monell* and ADA claims. (*See generally* LVMPD Mot. Dismiss).  The Court begins with Officer Conteras's Motion to Dismiss.

### A.  Ofc. Conteras Mot. Dismiss

As stated, Officer Contrera's moves to dismiss Plaintiff's (1) excessive force claim under the Fourth Amendment; (2) deprivation of familial association claim under the Plaintiffs Fourteenth Amendment; (3) deprivation of familial association claim under the Nevada Constitution; (5) battery; and (6) negligence claims.  Before addressing the merits of his Motion, however, the Court examines Officer Contreras's contention that the Court should consider his body camera footage in deciding his Motion.

#### 1.  Incorporation by Reference

Officer Contreras contends that the Court should incorporate by reference his body camera footage in deciding Plaintiffs' Motion to Dismiss because the FAC "extensively relies on the footage as the foundation for its allegations and claims, and no party can reasonably dispute the authenticity of the footage." (Ofc. Contreras Mot. Dismiss 6:22–24).  In response, Plaintiffs argue that their claims are "based upon [Officer Contreras's] misconduct, of which [his] body worn camera footage is but a single piece of evidence." (Resp. 6:13–15, ECF No. 22).  Thus, Plaintiffs maintain that the allegations underlying their claims are derived from a "variety of sources" evidencing Officer Contreras's misconduct and are therefore "[not] necessarily based upon [Ofc.] Contreras's body worn camera footage." (*Id.* 6:7–13).

///

The doctrine of incorporation by reference is meant to prevent plaintiffs "from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *C.B. v. Moreno Valley Unified Sch. Dist.*, 544 F. Supp. 3d 973, 988–89 (C.D. Cal. 2021) (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018)). "Defendants may incorporate a document if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* (quotations omitted). The doctrine extends to documents necessarily relied upon in a complaint or where the contents of the document are alleged in a complaint, and the document's authenticity and relevancy are not disputed. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). District courts have incorporated police body camera footage into a complaint for consideration of a Fed. R. Civ. P. 12(b)(6) motion when appropriate. *See, e.g.*, *Raudelunas v. City of Vallejo*, No. 2:21-cv-00394, 2022 WL 329200, at *1 (E.D. Cal. Feb. 3, 2022); *C.B.*, 544 F. Supp. 3d at 988-89; *Saved Magazine v. Spokane Police Dep't*, 505 F. Supp. 3d 1095, 1103 (E.D. Wash. 2020), *aff'd*, 19 F.4th 1193 (9th Cir. 2021), *cert. denied* 142 S. Ct. 2711 (2022).

Officer Contreras argues that his body camera footage is the basis of Plaintiffs' claims because "[n]o source other than the footage could be the evidentiary support" for the allegations underlying the encounter.[1] (Ofc. Contreras Reply 2:11–13). This argument is well-taken. It does not appear that Plaintiffs' FAC is based on Seth's recollection of the encounter

---

[1] Officer Contreras also contends that Plaintiffs engaged in "procedural gamesmanship" by filing an amended complaint which removed an allegation that explicitly referenced Officer Contreras's body camera footage. (Ofc. Contreras Reply 2:25–28, ECF No. 26). Officer Contreras correctly notes that Plaintiffs' Complaint included an allegation that referred to the "limited bodycam publicly available." (Compl. ¶ 21, ECF No. 1). But the Ninth Circuit has held that "the mere mention of the existence of a document is insufficient to incorporate the contends of a document." *Eisenberg*, 593 F.3d at 1038. Even assuming Plaintiffs intentionally removed this allegation, the brevity and singular nature of the allegation does not constitute the type of extensive reference to warrant incorporation by reference. *See Az. Civil Constructors, Inc. v. Colony Ins. Co.*, 481 F. Supp. 3d 1141, 1147 (D. Ariz. 2020) (finding that a "single, conclusory reference" to a document failed to demonstrate the complaint extensively referred to the document).

because the FAC alleges that he is "permanently incapacitated, and can barely speak[.]" (FAC ¶ 34); *see Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 325 (E.D. Tex. 2021) (declining to incorporate by reference the police officers' body camera footage where, although it was possible that plaintiff quoted from the footage in his complaint, "it [was] equally likely that the quotes came from [p]laintiff's own recollection").  But Plaintiffs aver that Officer Contreras's misconduct is documented by other sources, including the CIRT and FIT team reports, "the statements of the Assistant Sheriff, and the body worn camera footage of other officers at the scene of the shooting." (Resp. 6:7–10).  It is equally likely that Plaintiffs' allegations are based on these sources.  "While [Officer Contreras] may be correct that Plaintiff[s] relied on the video footage itself, it is not clear from the [FAC] and the Court is not prepared to venture a guess." *Anniskiewciz v. City of Rochester*, No. 20-cv-6629, 2021 WL 1699731, at *3 (W.D.N.Y. Apr. 29, 2021).

At bottom, Plaintiffs' claims are based on the events surrounding his incapacitation.  The FAC does not refer to Officer Contreras's body camera footage, and "while [this footage]—like witness statements and other evidence—are important in helping the trier of fact understand the circumstances, [Plaintiffs'] claims are not based on the [body camera footage]." *Lee v. City of San Diego*, No. 18-cv-0159, 2019 WL 117775, at *5 (S.D. Cal. Jan. 7, 2019); *see Estate of Smith by Smith v. City of San Diego*, No. 16-cv-2989, 2018 WL 3706842, at *3 (S.D. Cal. Aug. 3, 2018) ("[N]either the Videos nor the Transcripts are an indispensable part of Plaintiffs' claims; they are evidence of the events underlying Plaintiffs claims.").  Accordingly, the Court declines to consider Officer Contreras's body camera footage in evaluating his Motion.

The Court next addresses the merits of Officer Contreras's Motion to Dismiss, beginning with Plaintiffs excessive force claim.

///

///

### 2.  Excessive Force - Fourth Amendment

Officer Contreras argues that his use of force was objectively reasonably because Seth posed an immediate threat to his safety requiring the use of lethal force. (*See generally* Ofc. Contreras Mot. Dismiss).

Excessive force claims are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989).  "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015) (internal quotation marks and citations omitted).

In assessing the reasonableness of force used, the Ninth Circuit examines the totality of the circumstances. *Glenn v. Washington County*, 673 F.3d 864, 872 (9th Cir 2011).  In *Graham*, the Supreme Court laid out three primary factors to evaluate the government's interest in the use of force, known as the *Graham* factors: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003) (citing *Graham*, 490 U.S. at 396).  Additional factors include whether the officer gave the suspect warning or could have used less intrusive means of force. *Lowry v. City of San Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017).  Courts assess the reasonableness of an officer's conduct "from the perspective of a reasonable officer on the scene," recognizing that officers may be "forced to make split-second judgments" under stressful and dangerous conditions. *Graham*, 490 U.S. at 396–97.

With respect to the quantum of force used against Seth, the parties agree the force used was lethal.  It is well established that "[t]he use of deadly force implicates the highest level of

Fourth Amendment interests." *A.K.H. ex rel Landeros v. City of Tustin*, 837 F.3d 1005, 1011 (9th Cir. 2016).  The Court must determine whether the government's countervailing interests at stake were sufficient to justify the use of deadly force.  *Graham*, 490 U.S. at 396.  The Court discusses the applicable factors below and concludes that Plaintiffs have adequately alleged that Officer Contreras's use of a firearm was excessive and therefore unreasonable.

### a.  Severity of the Crime

First, the Court notes that Officer Contreras was not responding to an alleged crime; instead, he was responding to an alleged mental health crisis.  When responding to a mental health crisis, "the use of officers and others trained in the art of counseling is ordinarily advisable." *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001).  "This is because when dealing with a disturbed individual, 'increasing the use of force may . . . exacerbate the situation,' unlike when dealing with a criminal, where increased force is more likely to 'bring[ ] a dangerous situation to a swift end.'" *Glenn*, 673 F.3d at 877 (quoting *Deorle*, 272 F.3d at 1283).  And "[e]ven when an emotionally disturbed individual is 'acting out' and inviting officers to use deadly force to subdue him, the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual." *Deorle*, 272 F.3d at 1283.

Plaintiffs' FAC alleges that Officer Contreras knew that Seth was suicidal and distraught. (FAC ¶ 28.)  The Ninth Circuit has held that "[v]iewing the facts in the light most favorable to the plaintiff, the 'crime at issue'" when police responded to a call to help a suicidal individual "was not 'severe' by any measure" because the decedent's "family did not call the police to report a crime at all, but rather to seek help for their emotionally disturbed son." *Glenn*, 673 F.3d at 874 (9th Cir 2011) (alteration omitted).  Although Seth had a knife, Plaintiffs' FAC does not allege that he threatened anyone other than himself or otherwise

///

committed a crime. (FAC ¶¶ 12, 18–19, 27).  Accordingly, this factor weighs in favor of Plaintiffs.

### b. Immediate Threat

The next factor is whether Seth posed an immediate threat to the safety of Officer Contreras or to others during the incident. *Graham*, 490 U.S. at 396.  The Ninth Circuit has repeatedly emphasized that this factor is the most important. *See, e.g.*, *S.B. v. County of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) ("Of all of these factors, the 'most important' one is 'whether the suspect posed an immediate threat to the safety of the officers or others.'") (quoting *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013)).

Here, it is not clear that Officer Contreras posed an immediate threat to the safety of Officer Contreras or anyone else at the time of the incident.  First, Plaintiffs FAC alleges that Seth was standing alone in a field, so he did not pose an immediate threat to others with his knife. (FAC ¶ 12).  Second, Plaintiffs aver that the FIT Team report stated that "Seth was well outside striking distance" of Officer Contreras when Officer Contreras shot him. (*Id.* ¶ 17).  Construing these allegations in the light most favorable to Plaintiffs, it is reasonable to infer that Seth posed no significant immediate danger to anyone when Officer Contreras shot him. *See Hayes v. Cnty. of San Diego*, 736 F.3d at 1228, 1234 (9th Cir. 2013) (finding that excessive force was a triable issue where victim shot "walking towards the deputies" with knife pointed down but "not charging," six to eight feet away from nearest officer, and had "clueless" expression); *S.B.*, 864 F.3d at 1014 (finding that excessive force was a triable issue because the suspect was approximately six to eight feet away when he grabbed the knife).  Accordingly, this factor also weighs in favor of Plaintiffs.

///

///

///

### c.  Resistance or Attempt to Evade Arrest

The final *Graham* factor, whether Seth had resisted or attempted to evade arrest, weighs in favor of Plaintiffs.  "To determine whether an officer's use of deadly force was reasonable, the Court considers the degree of resistance or attempt to evade arrest in relation to the force used." *Elifritz v. Fender*, 460 F. Supp. 3d 1088, 1110 (D. Or. 2020).  For example, the Ninth Circuit has suggested that it may not be reasonable to use a high degree of force in response to passive forms of resistance such as refusing to obey officers' commands. *See Bryan v. MacPherson*, 630 F.3d 805, 830 (9th Cir. 2010) (noting that although "passive resistance" can support the use of force, "the level of force an individual's resistance will support is dependent on the factual circumstances underlying that resistance"); *Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (suspect's refusal to obey commands and brief period of physical resistance were not "particularly bellicose" because suspect did not try to flee or physically attack officers).

Here, Plaintiffs allege that Officer Contreras fired after Seth refused to obey Officer Contreras's command to drop his knife. (FAC ¶ 14).  Officer Contreras may ultimately show that Seth escalated the encounter by refusing to drop the knife, but at this early stage, Plaintiffs' allegations lend itself to the reasonable inference that Seth's actions constituted a passive form of resistance that did not require the use of lethal force.

### d.  Other Factors

The *Graham* factors are not exhaustive.  Beyond these factors, the Ninth Circuit instructs courts to "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case whether or not listed in *Graham*." *Bryan*, 630 F.3d at 826 (internal quotation marks omitted).  These factors include whether the officer gave a warning before using lethal force, the availability of less intrusive alternatives to deadly force, and the mental condition of the victim. *Id.* at 829–30.

First, Plaintiffs FAC alleges that Officer Contreras gave no warning that he would use deadly force.  Instead, Officer Contreras's communication with Seth was limited to ordering him to drop the knife. (FAC ¶ 15).  "[C]ourts in this Circuit have concluded that '[m]ere commands, absent a statement that force will be used if the command is ignored, have not been found to constitute adequate warning.'" *Eyre v. City of Fairbanks*, No. 4:19-cv-00038, 2023 WL 2188457, at *13 (D. Alaska Feb. 23, 2023) (quoting *Hulstedt v. City of Scottsdale*, 88 F. Supp. 2d 972, 992 (D. Ariz. 2012); *see also Est. of Carreno v. County of Santa Barbara*, No. 2:18-cv-3694, 2020 WL 1172721, at *3 (C.D. Cal. Jan. 25, 2020) ("In addition, while Defendants ordered [the decedent] to drop the knife, they issued no explicit warnings that they would fire on him, which they did within three seconds of him stepping outside."); *but see Craig v. County of Santa Clara*, No. 17-CV-02115-, 2018 WL 3777363, at *18 (N.D. Cal. Aug. 9, 2018) ("However, the Court finds that the officers' command to 'drop the gun' was sufficient warning in these circumstances.").  As the Ninth Circuit observed, a "prior warning is all the more important where," as here, "the use of lethal force is contemplated." *Nehad*, 929 F.3d at 1137–38.

Second, Officer Contreras knew Seth was suicidal and mentally or emotionally unstable. (FAC ¶ 28); *see Penny v. City of Los Angeles*, No. 20-cv-7211, 2022 WL 2069132, at *7 (C.D. Cal. May 9, 2022) ("Another relevant factor is whether the suspect was evidently mentally or emotionally unstable or seeming to invite officers to use deadly force against him.") (citing *Vos v. City of Newport Beach*, 892 F.3d 1024, 1034 (9th Cir. 2018)).  In such circumstances, "when dealing with an emotionally disturbed individual who is creating a disturbance or resisting arrest, as opposed to a dangerous criminal, officers typically use less forceful tactics." *Glenn*, 673 F.3d at 877.  Plaintiffs' FAC alleges that Seth was a "disturbed or unstable individual, rather than a dangerous criminal." *Penny*, 2022 WL 2069132, at *7.  "Even when an emotionally disturbed individual is 'acting out' and inviting officers to use deadly force to

subdue him, the governmental interest in using such force is diminished by the fact that the officers are confronted, not with a person who has committed a serious crime against others, but with a mentally ill individual." *Deorle v. Rutherford*, 272 F.3d 1272, 1283 (9th Cir. 2001) (quotation omitted).  By using deadly force against Seth, Officer Contreras treated Seth as the former instead of the latter. *See Bryan v. MacPherson*, 630 F.3d 805, 829 (9th Cir. 2010) ("greater effort to take control of the situation through less intrusive means" may be necessary for mentally ill or unstable suspects).

Third, the availability of "less intrusive alternatives to deadly force" weighs against the reasonableness of Officer Contreras's actions. *Nehad*, 929 F.3d at 1137.  Though officers are "not required to use the least instructive degree of force available 'the availability of alternative methods of capturing or subduing a suspect may be a factor to consider,'" when considering the reasonableness of an officers' conduct. *Vos*, 892 F.3d at 1033 (quoting *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)).  Drawing all reasonable inferences in favor of Plaintiffs, as the Court must as this stage, questions remain regarding the options available to Officer Contreras to create distance between him and Seth and the extent to which Officer Contreras created the exigent circumstances by confronting Seth without a plan for how to engage a mentally ill individual or waiting for backup to assess the situation. *See Hart v. City of Redwood City*, No. 21-cv-02653, 2022 WL 18110847, at *4 (N.D. Cal. Dec. 14, 2022) (identifying similar factors in assessing whether less intrusive alternatives to deadly force were available); *Sommers v. City of Santa Clara*, 516 F. Supp. 3d 967, 987 (N.D. Cal. 2021) ("A police officer cannot create the escalation that then justifies the use of deadly force.").

Considering the foregoing—the lack of criminal conduct or flight, the absence of imminent harm towards Officer Contreras just prior to the shooting, the failure to warn, the availability of less intrusive force, and Seth's impaired mental state—the Court finds that Plaintiffs have adequately pled an excessive force claim.

### 3.   Fourteenth Amendment – Substantive Due Process

The Ninth Circuit has clarified the "standard of culpability for a due process right to familial association claim," noting that "only official conduct that 'shocks the conscience' is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Cnty. Of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).  Two standards exist to determine whether specific conduct "shocks the conscience:" (1) deliberate indifference or (2) purpose to harm. *Id.*  Which standard applies depends on the time frame involved and "whether the officers had the opportunity for actual deliberation." *Id.* at 1138.  When situations "escalate so quickly that the officer must make a snap judgment," courts apply the purpose to harm standard. *Id.*

Officer Contreras argues dismissal of Plaintiffs' Fourteenth Amendment claim for loss of familial relations is warranted for two reasons.  First, Officer Contreras contends that "Maureen lacks standing to bring a claim under the Fourteenth Amendment for loss of familial relations with her adult son, Seth." (Ofc. Contreras Mot. Dismiss 20:22–23).  Second, Officer Contreras contends that he did not act with the purpose of harming Seth. (*Id.* 14:15–15:3).  The Court begins by examining whether Maureen has standing to bring this claim.

#### a.  Standing

Most circuit courts do not typically recognize associational protection for non-cohabiting persons, even parents and adult offspring. *See Russ v. Watts*, 414 F.3d 783, 787 (7th Cir. 2005) (noting no circuits except the Ninth and Tenth Circuit "ha[ve] allowed a parent to recover for the loss of his relationship with his child [when they are not living together]); *Sinclair v. City of Seattle*, 61 F. 4th 674, 679 and 685 (9th Cir. 2023) (acknowledging the Ninth Circuit's outlying view).  Following the Ninth Circuit's decision in *Curnow by and Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991), however, this Circuit has consistently recognized that § 1983 claims may proceed under the theory that the Fourteenth

Amendment protects the right to the companionship and society between parents and their adult children. *See Smith v. Pierce Cnty.*, 218 F. Supp. 3d 1220, 1227 (W.D. Wash. 2016) (collecting cases). Recently in *Sinclair*, Judge Nelson noted in his concurrence that the Ninth Circuit "likely would not have recognized such a right" had "[it] fully considered the issue" but acknowledged that the *Sinclair* court was bound by "[its] prior holdings[.]" *Sinclair*, 61 F.4th at 685 (Nelson, J., concurring).

Relying on Judge Nelson's concurrence, Officer Contreras argues that "[t]he Ninth Circuit, sitting *en banc*, would likely follow the position of most sister courts that have disallowed familial relation claims for adult children," and, "regardless of how the *en banc* court might rule, the Supreme Court would likely reverse" the position of the Ninth Circuit. (Ofc. Contreras Mot. Dismiss 21:6–13). But even if the Ninth Circuit "arguably overexpanded the parental interest recognized by the Supreme, the Supreme Court authority does not necessarily contradict the Ninth Circuit." *Smith v. Pierce Cnty.*, 218 F. Supp. 3d 1220, 1228 (W.D. Wash. 2016). And "[t]his Court cannot and will not overrule Ninth Circuit precedent on this point." *Close v. Pierce Cty.*, 09-cv-05023, 2009 WL 3877598, at *4 (W.D. Wash. Nov. 18, 2009). Accordingly, the Court declines to dismiss Plaintiffs' Fourteenth Amendment claim for lack of standing.

### b. Purpose to Harm

As stated, "only official conduct that 'shocks the conscience' is cognizable as a due process violation" for the right to familial association. *Porter*, 546 F.3d at 1137 (quoting *Lewis*, 523 U.S. at 846). Two standards exist to determine whether specific conduct "shocks the conscience:" (1) deliberate indifference or (2) purpose to harm. *Id.* Here, the parties agree the purpose to harm standard applies. (Ofc. Contreras Mot. Dismiss); (Resp. Ofc. Contreras Mot. Dismiss 10:6–17).

///

This standard requires a plaintiff to make "a more demanding showing that [an officer] acted with a *purpose to harm* [the decedent] for reasons unrelated to legitimate law enforcement objectives." *Porter*, 546 F.3d at 1137 (emphasis in original) (citing *Lewis*, 523 U.S. at 836). "For example, a purpose to harm might be found where an officer uses force to bully a suspect or 'get even,'" *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010), "or when an officer uses force against a clearly harmless or subdued suspect." *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022) (quotation marks and citations omitted). Legitimate objectives include "arrest, self-protection, and protection of the public." *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018).

The allegations in Plaintiffs' FAC do not lend itself to the reasonable inference that Officer Contreras had an ulterior motive to harm that was unrelated to a legitimate law enforcement objective. Plaintiffs allege that Officer Conteras had an ulterior motive to harm Seth because he drove to "the scene of the shooting with malice in his heart and with a purpose to do harm[.]" (FAC ¶ 21). Although a court must accept a plaintiffs' factual allegations, it need not accord the same deference to legal conclusions. *Iqbal*, 556 U.S. at 678. At bottom, Plaintiffs allegation is a legal conclusion couched as a factual allegation. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (noting that "bald allegation of impermissible motive on [a defendant's] part, standing alone, is conclusory and is therefore not entitled to an assumption of truth" at the pleading stage).

Here, Seth was armed with a knife when confronted by Officer Contreras. "Whatever else can be said about Officer Contreras' use of force for Fourth Amendment purposes," the allegations in Plaintiffs' FAC do not lend itself to the reasonable inference that he had "an ulterior motive to harm when [he] fired on [Seth]," *see Estate of Carreno v. Cnty. of Santa Barbara*, No. 2:18-cv-3694, 2020 WL 1172721, at *4 (C.D. Cal. Jan. 25, 2020), that did not comport with the legitimate objective of self-protection, *see Foster*, 908 F.3d at 1211.

Accordingly, the Court will dismiss Plaintiffs Fourteenth Amendment claim without prejudice and with leave to amend because it is not clear that amendment is futile. *See Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023).

### 4. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Thus, to overcome a claim of immunity, Plaintiffs must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A right is "clearly established" when "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017) (quoting *al-Kidd*, 563 U.S. at 741).

Although courts may consider a qualified immunity defense raised in a motion to dismiss, determining claims of qualified immunity at this stage "raises special problems for legal decision making." *NAACP of San Jose/Silicon Valley v. City of San Jose*, 562 F. Supp. 3d 382, 395 (N.D. Cal. 2021) (quoting *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018)). "On the one hand, [courts] may not dismiss a complaint making a claim to relief that is plausible on its face." *Keates*, 883 F.3d at 1234 (internal quotation marks omitted). "But on the other hand, defendants are entitled to qualified immunity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 1234–35 (internal quotation marks omitted).

Here, the Court has already determined that Plaintiffs excessive force claim is plausible. To argue qualified immunity, Officer Contreras broadly asserts that Plaintiffs cannot show that

he violated any right, much less a right that was clearly established. (Ofc. Contreras Mot. Dismiss 15:5–18:9).  But a "qualified immunity analysis often turns on the specific facts of each alleged violation," facts that are not yet developed before the Court. *See NAACP of San Jose/Silicon Valley*, 562 F.Supp.3d at 396.  Regardless, taking Plaintiffs' allegations as true and with all inferences in their favor, the Court finds Officer Contreras is not entitled to qualified immunity at this time because the circumstances have been addressed in previously existing and binding caselaw.

The Court begins with cases where the suspect had a weapon.  In these cases, courts have focused on whether the individual was immediately threatening to use the weapon.  For example, in *Hayes*, the suspect had a large knife that he raised to shoulder height while taking a few steps toward the officers. *See Hayes*, 736 F.3d at 1232–35.  The court found a triable issue of reasonableness because "there [was] no clear evidence . . . that Hayes was threatening the officers with the knife . . . ." *Id.* at 1234.  Similarly, in *Glenn*, the Ninth Circuit held that a reasonable jury could find a constitutional violation where officers shot an individual holding a pocketknife that he "did not brandish at anyone." 673 F.3d at 873.  Finally, in *Vos*, the suspect had what appeared to be scissors in his hand, ignored police commands to drop the weapon, and ran toward the officers holding the scissors. *See Vos*, 892 F.3d at 1029.  The Ninth Circuit found that the officers did not show that less lethal means of stopping the suspect would have been ineffective, and whether the suspect posed an immediate threat to the officers' safety remained a question of fact for the jury. *Id.* at 1033–34.  Like Seth, the suspects in *Hayes* and *Glenn* cases were holding a weapon but were not immediately threatening to use the weapon on responding officers or others.  And like the officers in *Vos,* it is unclear whether Officer Contreras could have used less lethal force to subdue Seth.

Other factors present in this case have also been examined by clear authority.  With respect to disobeying police orders, the *Glenn* court found that the district court erred in

granting summary judgment for the defendants where the suspect had a knife and ignored multiple orders from the officers to drop it. *Glenn*, 673 F.3d at 875.  And in *Smith*, the Ninth Circuit held that the reasonableness of using less-than-lethal force was a question for a jury where the suspect ignored police commands to remove his hands from his pockets to show whether he had a weapon and physically resisted arrest. *Smith*, 394 F.3d at 703.  These cases provided fair notice to Officer Contreras failure to follow police commands does not always justify the use of deadly force.

Taken together, when the facts are viewed in Plaintiffs' favor, they are comparable to those examined by Ninth Circuit authority and should have put Officer Conteras on notice of the potential unconstitutionality of his actions.  Accordingly, the Court DENIES Officer Contreras' Motion as to the qualified immunity defense.  This ruling does not preclude Officer Conteras from raising qualified immunity at a later stage in this litigation. *See NAACP of San Jose/Silicon Valley*, 562 F.Supp.3d at 396 ("[T]he court finds that the qualified immunity arguments are better suited to summary judgment.").

### 5.  Nevada Constitutional Claim

Nevada's Due Process Clause is textually identical to the Due Process Clause of the Fourteenth Amendment in relevant aspects. *Compare* U.S. Const. XIV, § 1, *with* Nev. Const. art. 1, § 8(5).  Moreover, the Nevada Supreme Court reads the state clause as co-extensive with the federal clause. *See, e.g.*, *Wyman v. State*, 217 P.3d 572, 578 (2009).  Therefore, Plaintiffs' claim under the Substantive Due Process clause of the Nevada Constitution is parallel to their claim under the Fourteenth Amendment of the United States Constitution. *See Nelson v. Willden*, No. 2:13-cv-00050, 2015 WL 628133, at *5 n.3 (D. Nev. Feb. 12, 2015).  As a result, the Court's previous analysis finding that Officer Contreras did not act with an ulterior purpose unrelated to legitimate law enforcement objectives, correspondingly applies to Plaintiffs' Nevada Constitutional claim.  Accordingly, the Court dismisses Plaintiffs' Nevada Substantive

Due Process claim with leave to amend because it is not clear that amendment is futile. *See Lathus*, 56 F.4th at 1243.

### 6.  State Law Claims

The Court now turns to Plaintiffs' state law claims.  Before the Court addresses the merits of Plaintiffs' state law claims, however, it must determine whether Officer Contreras is entitled to discretionary immunity.

#### a.  Discretionary Immunity

Under NRS 41.032(2), no action can be brought against an officer or employee of the state or any of its agencies or political subdivisions "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused."  A state actor raising this defense must show (1) that the questioned decision involved personal judgment, choice, or deliberation and (2) that the decision was based on considerations of social, economic, or political policy. *Martinez v. Maruszczak*, 168 P.3d 720, 722, 728–29 (Nev. 2007).

There are two limitations on discretionary-act immunity.  First, immunity does not attach for actions taken in bad faith. *Falline v. GNLV Corp.*, 823 P.2d 888, 891 (1991); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007).  For instance, in the context of an arrest involving allegedly excessive force, an officer's action may be in bad faith if motivated by "hostility toward a suspect or a particular class of suspects . . . or because of a willful or deliberate disregard for the rights of a particular citizen or citizens." *Davis*, 478 F.3d at 1060.  Second, acts taken in violation of the Constitution cannot be considered discretionary. *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir.2011); *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000).  "[I]n general, governmental conduct cannot be discretionary if it violates a legal mandate." *Nurse*, 226 F.3d at 1002 (interpreting the FTCA's discretionary function exception, which mirrors Nevada's discretionary-act immunity test).

Here, Plaintiffs have asserted that Officer's Contreras's use of force—which is the basis for the state law claims—violated Seth's constitutional rights.  Because the Court finds Plaintiffs' have adequately plead an excessive form claim, Officer Contreras is denied discretionary-act immunity on Plaintiffs' state law causes of action. *See Koiro v. Las Vegas Metro. Police Dep't*, 69 F. Supp. 3d 1061, 1074 (D. Nev. 2014), *aff'd*, 671 F. App'x 671 (9th Cir. 2016) (denying discretionary-act immunity based on alleged constitutional violation).

### b.  Battery

Plaintiffs' battery cause of action asserts that Officer Contreras "used unreasonable and unjustifiable force against Seth when they shot him in the head" without his consent, rendering him permanently incapacitated. (FAC ¶ 70).

"A battery is an intentional and offensive touching of a person who has not consented to the touching." *Humboldt Gen. Hosp. v. Sixth Jud. Dist. Ct.*, 376 P.3d 167, 171 (Nev. 2016). "Under Nevada law, police officers 'are privileged to use that amount of force which reasonably appears necessary,' and are liable only to the extent they use more force than reasonably necessary." *Tuuamalemalo v. Greene*, 946 F.3d 471, 478 (9th Cir. 2019) (quoting *Ramirez v. City of Reno*, 925 F. Supp. 681, 691 (D. Nev. 1996)).  Thus, whether deadly force constitutes a battery in Nevada is analyzed under the same standard as the Fourth Amendment excessive force claim. *See Ramirez*, 925 F. Supp. at 691.

Here, because Plaintiffs' excessive force cause of action may proceed, Plaintiffs have also adequately alleged that Officer Contreras intentionally or offensively used excessive force in shooting Seth without his consent.

### c.  Negligence

Officer Contreras contends Plaintiffs' negligence claim fails because his actions were objectively reasonable as a matter of law. (Ofc. Contreras Mot. Dismiss 18:19–27).

///

To prevail on negligence cause of action, a plaintiff must generally show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages. *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996).  Generally, "state officials have a duty to exercise ordinary care in performing their duties." *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1065 (Nev. 2007).

Based on the Court's excessive force analysis above, Plaintiffs have adequately alleged whether Officer Contreras acted negligently by utilizing excessive force against Seth.  Whether Officer Conteras's conduct was reasonable is a question of fact not yet developed through discovery.

### 7.  Summary of Court's Disposition

In sum, Plaintiffs' excessive force claim under the Fourth Amendment, battery claim, and negligence claim may proceed.  Plaintiffs' deprivation of familial association claims under the Fourth Amendment and Nevada Constitution are DISMISSED with leave to amend.  The Court next turns to LVMPD's Motion to Dismiss.

### B.  LVMPD Mot. Dismiss

LVMPD moves to dismiss Plaintiffs' *Monell* and ADA claims.  The Court examines each claim in turn.

### 1.  *Monell* Liability

LVMPD contends that Plaintiffs have not alleged facts demonstrating that LVMPD had a policy or custom which caused the purported constitutional violation necessary to support a *Monell* violation. (LVMPD Reply 4:4–28, ECF No. 26).  In response, Plaintiffs aver that they alleged LVMPD failed to train its officers on how to de-escalate situations involving mentally ill, unstable, and suicidal individuals. (Resp. 17:10–18:2).  Plaintiffs contend that this failure to train has resulted in a custom of responding to these situations with excessive deadly force, as

evidenced by statistics showing that mentally ill and suicidal individuals are approximately three times more likely to be shot by LVMPD officers than members of the public, and past cases of individuals who were injured by LVMPD when they were having a mental health crisis. (*Id.*).

"A government entity may not be held liable under § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694 (1978)).  To state a claim for *Monell* liability, a plaintiff must allege "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation." *Id.* (quoting *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).

### a.  Failure to Train

Plaintiffs contend that LVMPD failed to train its officers on how to respond de-escalating situations involving individuals suffering a mental crisis, and that this failure to train resulted in officers using excessive force. (Resp. 17:12–18:2).  Failure to train may serve as a basis for § 1983 municipal liability only "where failure to train amounts to deliberate indifference to rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).  "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

"A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train" in order to

demonstrate the public entity's notice that a training policy is deficient and the entity's "continued adherence to a policy it knew or should have known has failed to prevent tortious conduct by employees . . . ." *Id.* at 62 (citation omitted).  Nonetheless, "in a narrow range of circumstances," a pattern of similar constitutional violations may not be required to show deliberate indifference where violations of constitutional rights are "patently obvious" or the "highly predictable consequence" of a failure to train. *Id.* at 63 (citations omitted).

"To allege a failure to train, a plaintiff must include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153–54 (9th Cir. 2021) (citing *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007)).

As currently alleged, Plaintiffs' *Monell* claim rests on a single incident: the shooting of Seth.  But the Supreme Court has "left open the possibility" that "municipal liability could be triggered by a showing that the municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]" *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 398 (1997).  "[I]n this narrow range of circumstances, the violation may be a highly predictable consequence of the failure to train and thereby justify a finding of 'deliberate indifference' by policymakers." *Id.*  For example, in *Benavidez*, the Ninth Circuit held that the single incident exception was inapplicable where the municipality's "employees [were] not making life-threatening decisions." 993 F.3d at 1140.  Unlike the officer in *Benavidez*, however, Officer Contreras was making a "life-threatening decision," as evidenced by the shooting of Seth.  The Court finds that Plaintiffs have alleged a single incident failure to train claim.

///

1

*b. Custom or Policy*

2

Plaintiffs next allege that LVMPD has a policy or custom of responding to individuals

3

suffering a mental health crisis with excessive, deadly force. (FAC ¶ 48). Plaintiffs advance

4

two sources which purportedly show this policy or custom. First, Plaintiffs argue "publicly

5

available" statistics that show mentally ill and suicidal individuals are approximately three

6

times more likely to be shot by LVMPD officers than members of the public. (*Id.* ¶ 49).

7

Second, Plaintiffs list the names of individuals who were injured by LVMPD when they were

8

having a mental health crisis. (*Id.* ¶ 51(a)–(d)).

9

A "custom" is "a widespread practice that, although not authorized by written law or

10

express municipal policy, is so permanent and well-settled as to constitute a custom or usage

11

with the force of law." *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The Ninth Circuit

12

has "recognized that '[l]iability for improper custom may not be predicated on isolated or

13

sporadic incidents' and that '[t]he custom must be so persistent and widespread that it

14

constitutes a permanent and well settled city policy.'" *Hunter v. Cnty. of Sacramento*, 652 F.3d

15

1225, 1234 (9th Cir. 2011) (quoting *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

16

Plaintiffs' allegations do not sufficiently allege LVMPD has a policy or custom of using

17

excessive force against individuals suffering from a mental health crisis. First, district courts

18

within the Ninth Circuit have found statistical arguments insufficient to show facts necessary

19

for alleging an improper custom. *See Cook. v. Cnty. of Los Angeles*, No. 19-cv-2417, 2021 WL

20

3163620, at *5 (C.D. Cal. May 26, 2021) ("Cook's references to news, articles, statistics, and

21

civil cases . . . are insufficient to show a widespread or longstanding custom or practice. News

22

articles are insufficient to show facts for this purpose."); *O.L. v. City of El Monte*, 2020 WL

23

4434949, at *8 (C.D. Cal. June 26, 2020) (same); *Strode v. Cnty. of San Diego*, No. 18-cv-670,

24

2019 WL 527468, at *3 (S.D. Cal. Feb. 11, 2019) (same). This is because data, when viewed

25

in a vacuum, can give rise to unreasonable or unjustified explanations for purported disparities.

For a *Monell* claim, context is needed to connect the data to a finding that the individuals who underly the statistic suffered a constitutional violation. *See Boykins v. City of San Diego*, No. 21-cv-01812, 2022 WL 3362273, at *6 (S.D. Cal. Aug. 15, 2022) ("Plaintiffs also include three examples of the SDPD using alleged excessive force on specific individuals. As tragic as the examples provided are, Plaintiffs offer no facts to indicate the situations led to a deprivation of constitutional rights sufficient to put the municipality and its policymakers on notice."); *Rosenbaum v. City of San Jose*, No. 20-cv-04777, 2021 WL 6092205, at *21 (N.D. Cal. Dec. 23, 2021) ("Other courts have consistently followed this line of precedent as applied to statistical arguments, holding that '[s]tatistics of unstained complaints of excessive force . . . without any evidence that those complaints had merit[] do[] not suffice to establish municipal liability under § 1983.") (quoting *Hocking v. City of Roseville*, No. 06-cv-0316, 2008 WL 1808250, at *5 (E.D. Cal. Apr. 22, 2008)).  Here, Plaintiffs alleged statistic is not accompanied by facts indicating that these shootings led to a deprivation of constitutional rights sufficient to put LVMPD on notice of an improper custom.  Without context, the statistic lends itself to the inference that individuals with mental illness are "more likely to engage in conduct which results in dangerous confrontations with police officers, regardless of how well police officers are trained." (LVMPD Mot. Dismiss 5:23–25).  In short, additional facts are needed to tie the statistic to Seth's alleged constitutional violation.

Second, the individuals listed by Plaintiffs who were allegedly injured by LVMPD when they were having a mental health crisis are insufficient to show facts necessary for an improper custom. (*Id.* ¶¶ 51(a)–(d)).  These occurrences, while tragic, do not demonstrate the existence of an improper custom of officers using excessive force without allegations showing that these individuals were ultimately successful in showing officers used excessive force. *See Gillam v. City of Vallejo*, No. 2-14-cv-2217, 2016 WL 4059184, at *7 (E.D. Cal. May 27, 2016); *see also Strauss v. City of Chicago*, 760 F.2d 765, 768–69 (7th Cir. 1985) (finding that the number of

excessive force complaints filed against a police department indicates "nothing," because people "may file a complaint for many reasons, or for no reason at all").  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). In short, Plaintiffs FAC fails to allege the type of persistent and widespread behavior required to show a policy or custom.  Accordingly, the Court will dismiss without prejudice Plaintiffs' *Monell* claim because it fails to allege a custom or policy.

### 2.  ADA Claim

LVMPD argues that Plaintiffs cannot allege facts supporting the conclusion that LVMPD or Officer Contreras acted with deliberate indifference towards Seth's disability. (LVMPD Mot. Dismiss 12:14–13:9); (LVMPD Reply 7:22–8:17).  Title II of the ADA provides that individuals with disabilities cannot be "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  This provision applies to police "services, programs, or activities." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds by City & Cnty. of San Francisco*, 575 U.S. 600 (2015).

"To state a claim under Title II of the ADA, a plaintiff generally must show: (1) [ ]he is an individual with a disability; (2) [ ]he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) [ ]he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of h[is] disability." *Id.* at 1232.  When, as here, Title II plaintiffs seek monetary damages, they must also show that the defendants acted with

discriminatory intent. *See Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). This requires a showing of deliberate indifference. *Id.* "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." *Id.*

A viable ADA claim may be brought "where, although police properly investigate and arrest a person with a disability for a crime unrelated to that disability, they fail to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees." *Id.* Therefore, if an officer fails "to reasonably accommodate [the plaintiff's] disability . . . without taking [his or] her mental illness into account and without employing tactics that would have been likely to resolve the situation without injury to [himself or] herself or others," a violation of the ADA may be asserted. *Id.*; *see also Vos*, 892 F.3d at 1037 (finding viable claims under the ADA where "the officers [ ] had the time and the opportunity to assess the situation and potentially employ the accommodations identified by the Parents, including de-escalation, communication, or specialized help").

With regard to the first element, Plaintiffs have plausibly alleged that Seth—a man who suffered from schizophrenia and major depression, which limited his ability to communicate and interact with others and engage in basic self-care—was an individual with a disability. *See* 42 U.S.C. § 12102(1) (defining "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of such individual"); *see also Bresaz v. County of Santa Clara*, 136 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (finding that although "courts have generally required the party to plead the disability with some factual specificity," plaintiffs are generally successful if they "allege that [they] suffered from a specific, recognized mental or physical illness"). The parties do not appear to dispute the second prong of Plaintiffs' ADA claim—that Seth was otherwise qualified to participate in or receive the benefit

of a public entity's services.  "[T]he ADA's broad language brings within its scope anything a public entity does," so this prong is also satisfied. *See Lee v. City of Los Angeles*, 250 F.3d 668, 691 (9th Cir. 2001).

Next, Plaintiffs plausibly allege that Officer Contreras discriminated against Seth because "[d]iscrimination includes a failure to reasonably accommodate a person's disability." *See Sheehan*, 743 F.3d at 1232.  The Ninth Circuit has recognized that in certain circumstances, law enforcement officers must employ "generally accepted police practices for peaceably resolving a confrontation with a person with mental illness" to comply with the ADA. *See id.* at 1232 (finding that factual dispute remained as to whether officers should have accommodated mentally ill plaintiff by "engag[ing] in non-threatening communications and us[ing] the passage of time to defuse the situation rather than precipitating a deadly confrontation"); *see also Vos*, 892 F.3d at 1037  (finding that the district court had improperly granted defendants' summary judgment motion because the officers could have accommodated mentally ill decedent by employing "de-escalation, communication, or specialized help" techniques).  And Plaintiffs offer specific examples of how LVMPD and Officer Contreras could have reasonably accommodated Seth's conditions before shooting him, including respecting his comfort zone, not forcing confrontation, waiting for the arrival of officers trained to respond to a mental health crisis, and using non-lethal force. (FAC ¶¶ 63–65).  "[W]hether these proposed accommodations would have in fact been reasonable for Officer Contreras to employ under the circumstances is a question of fact that should not be decided by the Court at this pleading stage." *Almarou v. City of Gardena*, No. 18-cv-04908, 2019 WL 7945590, at *5 (C.D. Cal. Dec. 30, 2019) (citing *Sheehan*, 743 F.3d 1233).

Plaintiffs nonetheless fail to allege that LVMPD acted with deliberate indifference during the incident.  Again, "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood."

*Duvall*, 260 F.3d at 1138.  "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id.* at 1139.  "To meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent[ ] and involves an element of deliberateness." *Id.*  Here, the Court finds that Plaintiffs have failed to satisfy the second element of the deliberate indifference test.

The Court finds the United States District Court for the Northern District of California's decision in *Hall v. City of Walnut Creek* instructive. No. 19-cv-05716, 2020 WL 408989 (N.D. Cal. Jan. 24, 2020).  In that case, Miles Hall was an adult man who lived with his family in Walnut Creek, California. *Id.* at *1.  Hall was known to the police as a person with a mental health disability and the police placed a "hazard" on his address. *Id.*  The hazard meant that if the police were called in the future to this address, officers would work to de-escalate the situation. *Id.*  The complaint alleged that no responding officer followed the hazard when the family called subsequently to ask the police to transport Hall to the hospital. *Id.*  Instead, the officers shot and killed Hall as he ran toward them with a gardening rod in his hand. *Id.*  Hall's parents filed suit against the City of Walnut Creek, bringing eight claims, including a claim under Title II of the ADA for Walnut Creek's alleged failure to train its officers to recognize Hall's symptoms of disability, failing to employ de-escalation tactics, and failing to use non-lethal force. *Id.* at *3.

The *Hall* court dismissed the ADA claim without prejudice, finding that the complaint failed to allege facts making deliberate indifference more than merely possible.  The court noted that the complaint alleged that Walnut Creek "failed to train, supervise or discipline officers in de-escalation tactics and that defendant officers failed to follow proper de-escalation tactics against a person suffering from schizoaffective disorder" but found that this allegation,

along with the facts in the complaint, lent itself to a finding of negligence rather than deliberateness. *Id.* at *6.

The Court finds the circumstances and reasoning of *Hall* persuasive.  Like the allegations in *Hall*, Plaintiffs' FAC alleges that LVMPD failed to train officers to respond to individuals suffering from a mental health crisis and to use de-escalation tactics. (FAC ¶¶ 63–65).  But Plaintiffs' FAC does not include allegations demonstrating that LVMPD, through Officer Contreras's actions, was deliberately indifferent to Seth's disability, as opposed to negligent. *See Anderson v. Cal. Dep't of Corr. & Rehab.*, No. 15-cv-02013-MEJ, 2016 WL 7013246, at *2 (N.D. Cal. Dec. 1, 2016) (dismissing an ADA claim because "Plaintiff has failed to plead the factual content that would allow the Court to draw the reasonable inference that the failure was intentional, rather than inadvertent").  Because Plaintiffs may be able to cure this claim with additional allegations, the Court dismisses this claim without prejudice.

### 3.  Summary of Disposition

In sum, Plaintiffs' *Monell* claim based on a failure to train claim may proceed. Plaintiffs' *Monell* claim based on a custom or policy and ADA claim is dismissed without prejudice and with leave to amend.

///
///
///
///
///
///
///
///
///

IV.     **CONCLUSION**

**IT IS HEREBY ORDERED** that Officer Contreras's Motion to Dismiss, (ECF No. 19), is **GRANTED in part and DENIED in part**.  Plaintiffs shall have 21 days from the date of this Order to file an amended complaint.  Any amended complaint should remedy the deficiencies identified in this Order.  Failure to file an amended complaint by this date shall result in the Court dismissing Plaintiffs' deprivation of familial association claims under the Fourth Amendment and Nevada Constitution with prejudice.

**IT IS FURTHER ORDERED** that LVMPD's Motion to Dismiss, (ECF No. 21), is **GRANTED in part** and **DENIED in part**.  Plaintiffs shall have 21 days from the date of this Order to file an amended complaint.  Any amended complaint should remedy the deficiencies identified in this Order.  Failure to file an amended complaint by this date shall result in the Court dismissing Plaintiffs' *Monell* claim based on a custom or policy and ADA claim with prejudice.

**DATED** this __31__ day of January, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT